Jones, J.
 

 The Industrial Commission contends that under the Constitution and the enabling act, Section 1465-54, paragraph 4, General Code, it had authority to apply a rating system to the relator as an individual employer, calculated upon merit and predicated upon the basis of the relator’s individual accident experience in the prosecution of its mining business. Counsel for the relator insist that neither Constitution nor
 
 *275
 
 statute contains such authority; but that the rating system is required to be imposed upon occupational groups or class according to the degree of hazard attaching to the occupation, and that such system cannot be applied to separate individual employers composing the class.
 

 In their brief counsel for the relator say that the language employed in the Constitution “empowers the legislature to authorize the industrial commission to fix rates of contribution by employers to the state insurance fund according to the classification of industry. It clearly does not authorize the establishment of a rate in addition thereto based upon the individual experience of an employer.”
 

 We cannot agree to so narrow a construction of the various provisions employed in Section 35, Article II, of the Constitution. When we consider its context and scope, the legislative authority conferred thereby is far broader and more comprehensive than is claimed by the relator. Without quoting the entire constitutional article, it is evident that its purpose is to provide compensation for workmen and their dependents, to establish a state fund created by compulsory contribution from employers, to be administered by the state, the state being empowered to determine the terms and conditions upon which payment shall be made from such fund. It provides for the setting aside, as a separate fund, such part of the contributions paid by employers as in the judgment of the board may be necessary, so as to equalize, as far as possible, the burden on the fund; and the constitutional provision which is especially germane to the question now presented for our determination reads as follows: “Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund,
 
 *276
 
 and to determine all rights of claimants thereto.” It will he noted that, under the quoted provision, the Legislature has authority to classify, not industries or groups in industry, but “to classify all occupations, according to their degree of hazard.” We have no doubt that the Legislature could apply a rating system to groups of employers if it so desired; but we find no language in the Constitution inhibiting the Legislature from departing from the group classification, if it determines that the group system is inequitable or unwise. The legislative authority “to classify all occupations,” as we view and construe the phrase, comprehends a classification of each and every occupation according to the degree of hazard affecting the individual occupation engaged in by an employer. The various provisions of the Constitution connote that meaning; their underlying spirit contemplates a purpose, not only to provide compensation to workmen and their dependents, but to preserve, as far as possible, the factor of safety in the conduct of an employer’s particular business, and to prevent loss of life and injuries to his employees. That this was the purpose of the Constitution was shown by the following significant clause: “Such board shall set aside as a separate fund such proportion of the contributions paid by employers as in its judgment may be necessary, * * * to be expended by such board * * * for the investigation and prevention of industrial accidents and diseases.”
 

 The grave importance attaching to this case is recognized by the employers and employees, both of whom have engaged counsel who, as
 
 amici curiae,
 
 have submitted briefs sustaining the constitutionality of the ■ act. The state fund is in the nature of insurance for the benefit of employees; contributions thereto by employers are compulsory, and are made upon the theory that the amount of their contributions will cover the individual risk and hazards attaching to their several
 
 *277
 
 occupations. Those employers who, in the language of the statute, do “encourage and stimulate accident prevention,” are naturally interested that the fund shall not be depleted, thereby entailing heavier contributions on their part. It would be inequitable to impose upon the careful employer not only an amount of premium sufficient to cover his own individual risk, but also an additional premium necessary to pay for heavy casualties sustained by other less careful employers. There are some individual employers in a group of similar occupations who are more diligent than others in the conduct of their particular plant operation, and in the prevention of accidents, and by such conduct impose a lesser burden upon the state insurance fund.
 

 In the early years, following the adoption of the Constitution, the Legislature, acting under its general police powers and its then judgment, confined its classification to groups of similar industries, and established a system of an attempted equality of rating to such groups. Actuated by a wide experience, gained from information and statistical reports, covering the various occupations during former years, and so that premium rates should be equitably imposed upon the various employers of the state, the Legislature in 1919 (108 Ohio Laws, Part 1, 315) adopted the following provision, applying the rating system to a more equitable method of classification: Section 1465-54, paragraph 4, General Code: “The industrial commission of Ohio shall have the power to apply that form of rating system which, in its judgment, is best calculated to merit or individually rate the risk most equitably, predicated upon the basis of its
 
 individual
 
 industrial accident experience, and to encourage and stimulate accident prevention.”
 

 The preceding section authorized the commission to classify occupations or industries with respect to their degree of hazard. The language employed in the
 
 *278
 
 quoted paragraph is clear and explicit. It authorizes the commission to apply to the relator and any others an
 
 individual
 
 rating system calculated upon merit and “predicated upon the basis of its1 individual industrial accident experience.” The present classification employed by the commission embraces two classes, both predicated upon experience: First, those employers who carry on their occupation with care, and safeguard the life and limb of their employees; and, second, those employers, who although they be in the same group, so carelessly manage their individual occupations or businesses as to cause a higher percentage of injuries to their employees. These two classifications possess the merit of having employers pay into the state insurance fund an amount of premium that will substantially cover their own individual risks; and do not impose upon the careful employer the additional burden of paying a further and higher premium to cover risks or casualties incurred in a similar business or occupation which is not being operated with the same care. The argument advanced by the relator, that the latter class of employers is penalized by the imposition of additional awards for failure to comply with specific requirements, does not always relieve the situation; for a particular business may be unskillfully conducted where no such requirements have been authorized.
 

 In an attempt to “encourage and stimulate accident prevention,” the Legislature.has adopted a reasonable basis for classification of individual occupations according to their several degrees of hazard; its action in so doing is predicated upon “individual industrial accident experience.” Section 1465-54, paragraph 4, in our opinion, does no violence either to the federal or state Constitutions by authorizing the .commission to apply to individual occupations “that form of rating system which, in its judgment, is best calculated to merit or individually rate the risk most equitably,
 
 *279
 
 predicated upon the basis of its individual industrial accident experience, and to encourage and stimulate accident prevention.” Such a classification is neither unreasonable nor arbitrary; and we think its basis is fully sustained by state and federal courts.
 

 “There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds.”
 
 Middleton
 
 v.
 
 Texas Power & L. Co.,
 
 249 U. S., 152, 157, 39 S. Ct., 227, 63 L. Ed., 527.
 

 “A classification having some reasonable basis does not offend against that clause [the equal protection clause] merely because it is not made with mathematical nicety, or because in practice it results in some inequality. * * * When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.”
 
 Lindsley
 
 v.
 
 Natural Carbonic Gas Co.,
 
 220 U. S., 61, 78, 31 S. Ct., 337, 340, 55 L. Ed., 369, Ann. Cas., 1921C, 160.
 

 For the reasons stated the demurrer of the defendants will be sustained and the writ denied.
 

 Demurrer sustained and writ denied.
 

 Matthias, Day, At.t.en, Kjnkade and Stephenson, JJ., concur.