Williams, J.
This canse ■ is an original action in mandamus to compel refund of alleged excess of premiums paid under the Workmen’s Compensation Law. Heretofore this court has heard and overruled the demurrer to the petition. State, ex rel. The Zone Cab Corp., v. Industrial Commission, ante, 156, 5 N. E. (2d), 477. An amended answer and reply have since been filed and the cause is now submitted on the evidencé.
For many years the relator, The Zone Cab Corpo *438 ration, has been in the business of operating taxicabs in the city of Cleveland, Ohio. Since May 7, 1934, all drivers of relator’s taxicabs have been its employees; prior to that time there was a relation between the relator and certain drivers named Coviello, Wood, Bergman and Rogers, the nature of which was determined only by litigation. Relator, during the whole period, has had in service under hire three or more workmen or operators and has therefore been subject to the Workmen’s Compensation Law of Ohio. The litigation which determined the relation of the taxicab drivers, Coviello, Wood, Bergman and Rogers, arose thus: Those four drivers were killed while driving taxicabs for relator and, as a result of these casualties, the dependents of each filed with the Industrial Commission a claim for workmen’s compensation; three of which claims were filed in 1931 and the last in 1932.
These claims were disallowed by the commission on the ground that the deceased drivers were independent contractors and not employees. From the orders of the commission disallowing the claims, the respective claimants took appeals by filing petitions in the Court of Common Pleas. On June 12, 1935, this court held that the relation of employer and employee did not obtain between The Zone Cab Corporation and Coviello, and that the claim therefore was not compensable. Coviello v. Industrial Commission, 129 Ohio St., 589, 196 N. E., 661.
’ On authority of that case the claims arising out of the deaths of Wood, Bergman and Rogers were finally disposed of as unfounded in law.
Shortly after the findings by the Industrial Commission, its actuary, in anticipation that these claims might become a charge upon the State Insurance Fund if judgments were finally rendered in favor of claimants, set up a contingent reserve of $1000 for each claim. This course resulted, as will appear, in the rais *439 ing of the rate of premium, and this increase is the real reason for this action in mandamus.
Was the setting up of these reserves warranted?
The statutes provide for the establishment of rates of premium that will maintain a solvent insurance fund and create a reasonable surplus but not more (Sections 1465-53a, 1465-54 and 1465-55, General Code), and authority is given to invest the “surplus or reserve” (Section 1465-58, General Code). The general right to set up reserves is therefore recognized by statute.
No doubt the actuary was impelled to the course he pursued regarding the reserves under consideration by what he deemed sound insurance practice. The reserves are for the protection of the fund and should be sufficient to cover potential loss from claims of whatever character, including those contingent upon the outcome of action by the commission or litigation in courts of justice. No other course would insure the preservation of a solvent state insurance fund. The setting up of the reserves was wholly proper.
Should such reserves, when set up, influence the merit rating of an individual designated as employer in the claim?
To properly proceed with this inquiry it is necessary to know the nature of merit rating and its relation to the basic rate.
The establishment of rates of premium is provided for by statute.
“The Industrial Commission of Ohio shall classify occupations or industries with respect to their degree of hazard, and determine the risks of the different classes and fix the rates of premium of the risks of the same, based upon the total payroll in each of said classes of occupation or industry sufficiently large to provide an adequate fund for the compensation provided for in this act, and to maintain a state insurance fund from year to year, provided, however, that where *440 the payroll cannot be obtained or, in the opinion of the commission, is not an adequate measure for determining the premium to be paid for the degrees of hazard, the commission may determine the rates of premium upon such other basis, consistent with insurance principles, as shall be equitable in view of the degree of hazard, and whenever in this sub-chapter reference is made to payroll or expenditure of wages with reference to fixing premiums such reference shall be construed to have been made also to such other basis for fixing the rates of premium as the commission may in the foregoing instances determine.” Section 1465-53, General Code.
This section is authority for what is known as the basic rate.
‘ ‘ The Industrial Commission of Ohio shall have the power to apply that form of rating system which, in its judgment, is best calculated to merit or individually rate the risk most equitably, predicated upon the basis of its individual industrial accident experience, and to encourage and stimulate accident prevention; shall develop fixed and equitable rules controlling the same, which rules, however, shall conserve to each risk the basic principles of workmen’s compensation insurance.” Section 1465-54, paragraph 4, General Code. This provision sanctions merit rating and has been upheld by the court in State, ex rel. Powhatan Mining Co., v. Industrial Commission, 125 Ohio St., 272, 181 N. E., 99, 82 A. L. R., 938.
These foregoing enactments were passed in pursuance of Section 35, Article II of the Ohio Constitution, which in part reads: “Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to determine all rights of claimants thereto.”
*441 The Industrial Commission has adopted rules and regulations and employed actuarial methods for the determination of rates of premiums. All of this is made plain by the evidence. Since rates change annually, the commission publishes yearly a complete schedule of the newly-made basic rates. The basic rate is computed on the basis of the accident claim cost of the state-wide group of employers within the particular classification, and is the same as to all such risks. The basic rate is defined in the rules of the Industrial Commission as the rate printed in the manual. For instance, taxicab drivers come under Manual 7380, and, in the published rates effective July 1,1936, the rating for this manual is “chauffeurs, taxicabs and dump truck drivers” * * * Rate per $100 payroll, $2.50; and the office employees of relator are classified under Manual 8810, “office employees,” not otherwise classified, “Rate per $100 payroll, $.05.”
The basic rate for each manual is determined by computing the average losses within that classification. The greater the hazard of the'classification the greater the basic rate. The relative hazard of the business of the employer in a given manual in comparison with that of other employers in the same manual is not considered in determining the basic rate.
The basic rate is recomputed each year by taking the recent development of all accident experience up to April 1st of the year of rate revision calculation, and such basic rate becomes effective July 1st of such year.
When an employer makes his first application for state insurance he is rated at the basic rate plus 30%. The employer is rated according to the basic rate until such time as he is qualified by experience for merit rating. There are two exceptions to this rule. Traveling salesmen, Manual 8747, and office employees, Manual 8810, are not merit rated, and the basic rate applies to the payroll of these classifications. It is evident that *442 hazards of these employments are reduced to the minimum.
Merit rating consists of a rate modification allowed to be imposed upon an individual employer as a result of the relatively favorable or unfavorable accident experience in comparison with the experience of the particular industry as a whole.
The amount added to the basic rate of the individual employer as a result of an unfavorable accident experience is often designated as a penalty; if his experience is sufficiently favorable the rate modification may amount to a credit applied to. the basic rate. Thus the rate to be paid by the individual employer, called the risk rate or merit' rate, may be more or less than the basic rate.
Merit rating is based on the experience of the employer for the five calendar years immediately preceding his renewal which falls on and after July 1st of any year, provided his experience during the five calendar years covers a period of at least six months. However, no employer is merit rated unless he has developed a net earned premium of at least $200 during the five-year period.
There is a close relation between the reserves set up for anticipated losses of the individual employer and the risk rate he must pay. If the losses from uncertain claims such as are involved here require reserves to be established, it follows a priori that such reserves and the accident experience on which they are predicated should be used in computing, by the approved actuarial formulas, the merit rating of the employer designated in the claims filed. Such a course arises out of the necessities of the case, and the statutory provisions are such that the hazard arising from doubtful claims may be taken into consideration by the commission. If it were necessary to defer action awaiting the outcome of litigation, insolvency of the insured employer might render collection of increased premiums *443 difficult or impossible. Tbe solvency of the State Insurance Fund requires action when the hazard arises and the law is broad enough to permit action then. Therefore such reserves may be taken into consideration in the merit rating of the particular employer.
Is the relator entitled to a refund?
In determining the premiums to be paid by the relator, the actuary, after setting up reserves for the four claims in question, computed penalties to be added to the basic rate by taking these claims into consideration as part of relator’s accident experience. These computations were based upon five-year periods, the risk rate (basic rate plus penalty) for the billing from May 3, 1934, to November 3, 1934, being grounded on the five-year period, 1928 to 1932 inclusive, and so on for each successive five-year period virtually until the decision of this court in Coviello v. Industrial Commission, supra. The amount so collected and retained exceeds by $4416.33, what would have been collected if the four claims had not been included as part of the experience of relator in making the calculation. The relator claims he is entitled to a refund of that amount.
Section 1465-55, General Code, provides for a “refunder” of premiums paid in certain cases but does not expressly provide for a situation such as is presented here.
The hazards which warrant the retention of premiums collected are those which arise out of the relation of employer and employee. When premiums have been paid to protect the State Insurance Fund pending litigation, and it is finally determined that collection has been made based on casualties suffered by those who were independent contractors and not employees, the excess of premiums paid acquires a new legal aspect. The fact that the statutes do not expressly provide for a refund is not controlling. If rates are imposed and collection made to provide for a contingency which may result in liability for compensation and the *444 eventuality discloses that there is not and never could have been any liability because the claims grew out of an independent contractual relation, the overpayment should be refunded. The rationale of this concept is that the excess payments never did in reality belong in the State Insurance Fund and could be required in the first instance only for the purpose of meeting a possible adjudication requiring payment of compensation on the claims. The adjudication having been otherwise the excess is no longer properly a part of the fund and should be restored to the rightful owner.
The relator is entitled to a refund covering excessive payments under merit rating, and a writ of mandamus will be awarded commanding the refund of $4416.33.

Writ allowed.

Weygandt, C. J., Jones, Matthias, Day, Zimmerman and Myers, JJ., concur.