The specific question of law presented to the court upon argument of the demurrer to the petition is whether the Industrial Commission may apply to the relator's pay roll the premium rates applicable to a general contractor instead of the separate *Page 146 
rates covering the various operations actually performed by his employees on the building which he has contracted to erect.
It is the contention of the relator that the actions of the commission in refusing to separately classify and rate the occupations of relator's employees "is unlawful and a violationof Section 35, Article II of the Constitution of Ohio."
The constitutional provision is in part as follows:
"Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification * * *."
Prior to the adoption of this constitutional provision a workmen's compensation law had been enacted which contained a provision (in a section codified as Section 1465-53, General Code, 102 Ohio Laws, 527) that "the State Liability Board of Awards shall classify employments with respect to their degree of hazard," etc.
That section was amended February 26, 1913, the only change in the above-quoted portion being the substitution of the word "occupations" for "employments," thus conforming with the language of the constitutional provision.
The workmen's compensation law was amended in several respects in 1919 (108 Ohio Laws, pt. 1, 314), and it was then that the words "or industries" were inserted in Section 1465-53, General Code, so that it now reads: "The Industrial Commission of Ohio shall classify occupations or industries with respect to their degree of hazard," etc.
It is the contention of the relator that the Legislature thereby attempted to extend the jurisdiction and increase the power of the Industrial Commission beyond that comprehended in the terms of the constitutional provision authorizing its establishment, and that the action of the Industrial Commission complained of *Page 147 
was based upon and pursuant to the supposed additional authority conferred by the statutory amendment in question.
If in the respect stated the powers conferred by the Legislature upon the Industrial Commission are inconsistent with or contrary to those authorized by the constitutional provision, the former must of course be disregarded. The constitutional provision will govern and control. Hence our question here is primarily whether the classification made in this instance is violative of Section 35, Article II of the Constitution.
The relator's entire contention is based upon the theory that "occupations," as that term is used in the constitutional provision, relates to the work of each employee and not to the business of the employer, and therefore that his rate of premium should be based upon his pay rolls in accordance with the particular kind and class of service being performed by each of his various employees in and about the building which he is engaged in erecting. He asserts that it is unconstitutional to fix premium rates based on the experience of hazard in the industry employing the workman. If that theory is correct, the Industrial Commission has been seriously at fault throughout the entire period of its administration of the workmen's compensation law, particularly with reference to making classifications with respect to degrees of hazard, determining the risks of different classes and fixing the rates of premium.
This very contention was made by the relator in State, exrel. Reaugh Construction Co., v. Industrial Commission,119 Ohio St. 205, 162 N.E. 800, the first case before this court involving a challenge of premium rates fixed and applied by the commission. In that case it was complained that the commission refused to permit the relator "to segregate its pay roll among the available classifications in defendant's manual of rates." *Page 148 
In the discussion of the question presented in that case, it was developed that it was considered "not only impracticable but physically impossible to classify the occupation of an employee" and therefore the system of classification adopted and applied by the commission has been based upon the nature of the employer's business "and not the various functions that he may do that make up his particular business."
The court has heretofore considered the meaning of the word "occupations" as it is used in Section 35, Article II of the Constitution. Quoting from the opinion of Judge Jones inState, ex rel. Powhatan Mining Co., v. Industrial Commission,125 Ohio St. 272, at page 276, 181 N.E. 99, 82 A. L. R., 938:
"The legislative authority 'to classify all occupations,' as we view and construe the phrase, comprehends a classification of each and every occupation according to the degree of hazard affecting the individual occupation engaged in by an employer. The various provisions of the Constitution connote that meaning; their underlying spirit contemplates a purpose, not only to provide compensation to workmen and their dependents, but to preserve, as far as possible, the factor of safety in the conduct of an employer's particular business, and to prevent loss of life and injuries to his employees."
It is to be observed that throughout the service of the Industrial Commission, as evidenced by its rules and rates set forth in its manual issued at various periods, it has used the terms "occupations" and "industry" interchangeably, but always with reference to the business of the employer rather than the work performed by the employee. Such appears also to be the usage of those terms in other states having workmen's compensation laws. As pointed out in the Reaugh case above referred to, the hazards of an individual carpenter, for instance, "are not the same in every occupation where a carpenter may be employed." *Page 149 
The commission must be permitted to deal with the difficult problem of classification of rates in a practical manner and permitted a wide range of discretion in order to carry out the paramount purpose of the authority conferred by the Constitution "to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to determine all rights of claimants thereto."
It is the degree of hazard that is to be ascertained, for thereon depends the rates of contribution required of the employer. It seems clear that whatever be the nature of the work performed by an employee and whatever be his part in the organized force operated by the employer, the hazard of the employment depends upon the nature of the work being done by all together, whether the collective term to be applied thereto be occupation, industry or business.
In the case of State, ex rel. River Mining Co., v. IndustrialCommission, 136 Ohio St. 221, 24 N.E.2d 947, the court announced the conclusion that "Employees of different occupations may all come under the manual applied to a particular industry. * * * In other words there is no requirement that each occupation or type of operation within a given industry be classified or rated separately."
We quote the following statement from the opinion of the court in the Reaugh case, supra, which is pertinent here:
"The experience of men, expert in this department of investigation, whose reports are founded upon experience touching the various hazards of industries and occupations, should be given important consideration; and no doubt the reports of its statisticians and actuaries were followed by the Ohio commission in making its classification of occupations or industries 'with respect to their degree of hazard.' Section 1465-53, General Code. *Page 150 
"The commission was of opinion that employers or building contractors doing business of the generally large character that this relator did should fall within the classification which required that occupation or industry to pay an average fixed premium on all payroll employees engaged in that class. This classification and its determination are committed to the sound discretion and judgment of the commission."
It is our conclusion, therefore, that the action of the Industrial Commission in applying to the relator's pay roll the premium rates applicable to a general contractor and in refusing to separately classify and rate the several occupations or functions of relator's various employees doing work on the building which he has contracted to erect is not violative of but in conformity with Section 35, Article II of the state Constitution. It follows that the demurrer to the petition is sustained and writ denied.
Writ denied.
WEYGANDT, C.J., TURNER, WILLIAMS, HART and ZIMMERMAN, JJ., concur.
BETTMAN, J., not participating.