THE STATE EX REL. CAFARO MANAGEMENT COMPANY
*v.* KIELMEYER, ACTING ADMR.

[Cite as *State ex rel. Cafaro Mgt. Co. v. Kielmeyer,*
113 Ohio St.3d 1, 2007-Ohio-968.]

(No. 2005–1992—Submitted January 9, 2007—Decided March 21, 2007.)

**Per Curiam.**

{¶ 1} Relator, Cafaro Management Company, objects to the reclassification by respondent, Acting Administrator of Workers' Compensation Tina Kielmeyer, of Cafaro's clerical and security personnel for premium-setting purposes. For the reasons to follow, we uphold the respondent's decision.

{¶ 2} Cafaro is a real estate management firm that operates several shopping centers. Its security personnel work exclusively at these malls. Its clerical workers, on the other hand, are divided among several locations, with some working at corporate headquarters and others working at offices within the malls themselves. A 1998 premium audit by the Bureau of Workers' Compensation determined that Cafaro's clerical staff should remain under occupational classification No. 8810, which covered "clerical, office employees NOC [not otherwise classified]." Cafaro's security staff was kept in classification 7720, "police officers and drivers."

{¶ 3} After a new audit in 2004, the bureau reclassified Cafaro's clerical workers under classification 9012, "Building operation by owner, lessee, or real estate management firm: professional employees, property managers and leasing agents & clerical, sales persons." Security personnel were transferred from classification 7720 to 9015, "Buildings—operation by owner or lessee or real estate management firm: all other employees."

{¶ 4} The basic premium rates for these new classifications were higher than those used before, prompting Cafaro to appeal. As to its clerical staff, Cafaro argued that only those employees working at the mall offices should fall under classification 9012. Those who work at corporate headquarters—according to Cafaro—should remain under classification 8810. As to its security staff, Cafaro asserted that the only security staff explicitly included within 9015 are night watchmen and, hence, its security detail should stay in 7720. It also claimed that the phrase "all other employees" in classification 9015 puts its security personnel in with other positions where the risk is not equivalent.

{¶ 5} On April 27, 2004, the bureau's Adjudicating Committee rejected these arguments:

{¶ 6} "[T]he NCCI classification rule is clear that the one code that best describes the employers [sic] operations shall be assigned to the policy. It is apparent that operations of managing malls fall under Manual Nos. 9012 and 9015. Manual No. 9012 provides that clerical employees for these types of operations are not to be reported to Manual No. 8810. While the employer has a large clerical staff away from the mall at its corporate office, Manual No. 9012 includes clerical staff wherever situated. Since the security force is provided only for the mall, and is not operated as a separate business providing security services for other businesses or the general public, the proper classification for them is Manual No. 9015."

{¶ 7} On appeal, the bureau administrator's designee affirmed the Adjudicating Committee's decision, prompting Cafaro's original petition in mandamus to this court.

{¶ 8} Setting premium rates for workers' compensation coverage is one of the bureau's most challenging responsibilities. As early as 1928, we acknowledged the difficulty of this task, and we have repeatedly affirmed the deference due the agency in these matters. *State ex rel. Reaugh Constr. Co. v. Indus. Comm.* (1928), 119 Ohio St. 205, 209, 162 N.E. 800; *State ex rel. McHugh v. Indus. Comm.* (1942), 140 Ohio St. 143, 149, 23 O.O. 361, 42 N.E.2d 774; *State ex rel. Minutemen, Inc. v. Indus. Comm.* (1991), 62 Ohio St.3d 158, 161, 580 N.E.2d 777; *State ex rel. Progressive Sweeping Contrs., Inc. v. Ohio Bur. of Workers' Comp.* (1994), 68 Ohio St.3d 393, 395, 627 N.E.2d 550. Deference is required "in all but the most extraordinary circumstances," with judicial intervention warranted only when the agency has acted in an "arbitrary, capricious or discriminatory manner." Id. at 395–396, 627 N.E.2d 550.

{¶ 9} The rate-making process begins with "[c]lassif[ying] occupations or industries with respect to their degree of hazard." R.C. 4123.29(A)(1). Absolute precision in occupational classification is elusive. *Progressive Sweeping*, 68 Ohio St.3d at 395, 627 N.E.2d 550. A single employer may have multiple classifications assigned to it, and a single classification may contain multiple occupations. If that were not so, the number of classifications would be unmanageable. Id.

{¶ 10} For years, the bureau used its own system of about 200 occupational categories. In 1993, the General Assembly required the administrator to replace these bureau-created classifications with those of the National Council on Compensation Insurance ("NCCI") amid concerns that the former were overinclusive and could not be compared with categories in other states. R.C. 4123.29(A)(1); Am.Sub.H.B. No. 107, 145 Ohio Laws, Part II, 3113.

{¶ 11} Ohio Adm.Code 4123–17–08(D), in implementing the NCCI classifications, explains:

{¶ 12} "The purpose of this classification procedure is to assign the one basic classification that best describes the business of the employer within a state. Subject to certain exceptions described in this rule, each classification includes all the various types of labor found in a business."

{¶ 13} This "basic classification" is one of two types of classifications contained in the Administrative Code and entails "all classifications listed in this manual, except for the standard exception classifications." Ohio Adm.Code 4123–17–08(B)(1). The latter classification "describe[s] occupations that are common to many businesses. These common occupations are not included in a basic classification unless specified in the classification working [sic, wording]." Ohio Adm.Code 4123–17–08(B)(2).

{¶ 14} Cafaro first objects to the reclassification of its clerical employees from classification 8810 to 9012. No. 8810 is a standard exception classification covering "[c]lerical office employees *NOC* [*not otherwise classified* ]." (Emphasis added.) Cafaro's clericals, however, *are* otherwise classified. Classification 9012 encompasses "[b]uilding operation by owner, lessee, or real estate management firm: professional employees, property managers and leasing agents & *clerical,* salespersons." (Emphasis added.) Cafaro concedes that it is a "real estate management firm" engaged in "building operation"—the precise industry described by 9012. Clerical workers are expressly contained within it.

{¶ 15} Cafaro alleges that classifying its corporate-center clerical employees with its mall clerical employees violates the statutory directive to classify according to hazard. Cafaro argues that the latter have a more hazardous job because they work at the mall and encounter the general public more. We find this proposition unpersuasive. Cafaro's assertion is based solely on its own claims history and the fact that more workers' compensation claims were filed by those working at mall offices. As this court pointed out in *Minutemen,* however, "[a]ny allegations as to the safety record of a company's employees bears only on the company's merit rate, not its basic rate.", 62 Ohio St.3d at 161, 580 N.E.2d 777. Cafaro's individual experience does not establish that *industrywide,* the hazard to clerical workers in a mall office is substantially greater than the hazard to other clerical workers.

{¶ 16} Cafaro largely repeats the same objections to the bureau's reclassification of its security personnel from Classification 7720 to 9015. Classification 7720 covers "[p]olice officers and drivers" as well as "private security services, protective or patrol corps, protective agencies, * * * and businesses engaged in providing watch guard services for others." Among the occupations falling thereunder are employees of contracting agencies in bank services, including

guards, patrols, messengers or armored car crews and drivers. Cafaro maintains that its guards do security tasks. The bureau counters that it is Cafaro's occupation or industry that is classified, which is "real estate management" engaged in "building operation." Cafaro's employment of staff security personnel does not make Cafaro a private security business, which is what Classification 7720 encompasses.

{¶ 17} Consistent with Ohio Adm.Code 4123–17–08(D)'s directive to assign the "one basic classification that *best* describes the business of the employer within a state," the bureau stresses that Classification 9015 specifically applies to "real estate management firms" performing "building operation." (Emphasis added.) It is the companion provision to classification 9012, discussed earlier. Classification 9012 extends to "professional employees," including "property managers, leasing agents, * * * clerical staff and outside salespersons." Classification 9015 covers "[a]ll other employees" of a real estate management organization. Since security personnel are not included within Classification 9012, they, by default, fall under 9015.

{¶ 18} Cafaro's citation of a single reference to night watchmen in code 9015's scope provision is unpersuasive. The provision's express reference to "*all* other employees" of a real estate management firm encompasses both day and night security staff, regardless of any ancillary discussion of the latter.

{¶ 19} Cafaro's final challenge mirrors that raised as to its clerical workers. Classification 9015's catchall phraseology has resulted in placement of its maintenance and security personnel in the same classification. Cafaro claims that the former are more injury-prone and repeats its allegation that classification is not being assigned according to hazard. Again, however, this claim is based solely on Cafaro's own claims history. It is not evidence that in the profession as a whole, maintenance work is more dangerous than security work.

{¶ 20} We have stated: "[Those] expert in this department of investigation, whose reports are founded upon experience touching the various hazards of industries and occupations, should be given important consideration * * *." *Reaugh Constr.*, 119 Ohio St. at 209, 162 N.E. 800. In the case at bar, Cafaro has not shown that its occupational reclassifications are arbitrary, capricious, or discriminatory, and we must accordingly uphold them.

{¶ 21} A writ of mandamus is denied.

Writ denied.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

Julian Heinrich and David A. Fantauzzi, for relator.

Marc Dann, Attorney General, and Gerald H. Waterman and Derrick L. Knapp, Assistant Attorneys General, for respondent.