[Cite as *State ex rel. Am. Cylinders Ents., Inc. v. Logue*, 2021-Ohio-1661.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. American Cylinder Enterprises, Inc., | : | |
| | : | |
| Relator, | : | No. 17AP-831 |
| | : | |
| v. | : | (REGULAR CALENDAR) |
| | : | |
| [John Logue], Administrator, Ohio Bureau of Workers' Compensation, | : | |
| | : | |
| Respondent. | : | |

D E C I S I O N

Rendered on May 13, 2021

**On brief**: *Reminger Co., L.P.A.,* and *Kevin R. Sanislo,* for relator.

**On brief**: *Dave Yost,* Attorney General, and *John Smart,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, American Cylinder Enterprises, Inc., has filed this original action requesting this court issue a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC"), to vacate its order that changed relator's manual classification code from 8720 to 3620, and ordering the BWC to change the manual classification back to 8720.

{¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the

appended decision, including findings of fact and conclusions of law, and recommended this court deny relator's request for a writ of mandamus. Relator has filed six objections to that decision.

{¶ 3}   Relator argues in its first objection that the magistrate erred when she omitted several pertinent facts from her findings of fact concerning the procedural history of relator's manual code reclassification by BWC. First, relator asserts the magistrate's statement in the second finding of fact—that the employee with the claim that prompted the audit in this case was "severely" burned by an "exploding" cylinder—was improper because relator has consistently claimed that the burn was not "severe" because the total claim payout was only $1,219.47 and that the cylinder did not "explode." Relator contends the magistrate should have mentioned the multiple documents in the stipulated record contesting these claims. We find this argument without merit. The facts revealed the injured employee received second-degree partial thickness burns to his right forearm. Whether the magistrate termed the injured employee as being burned "severely" rather than "significantly," or some other adjective, is of little relevance to the ultimate determination. Furthermore, in the second finding of fact the magistrate found that it was the employee who described the accident as involving an "exploding cylinder," which is accurate. In addition, whether this particular claim resulted in "only" a $1,200 payout and attempting to juxtapose that with the fact that the premium for the new classification was more than double that of the old classification is not relevant to determining whether the BWC used the correct manual classification. Claim payouts could be higher if similar accidents occur in the future. Relator's attempt to downplay the seriousness of the incident and the injured employee's injuries is also belied by relator's own description of the accident, which it described as putting others at great peril.

{¶ 4}   Relator next argues the magistrate omitted the fact that the BWC previously assigned it code 8720 in 2004, and then reversed course after 11 years without sufficient explanation. However, the BWC clearly explained that code 8720 did not accurately reflect the description of relator's business activities and the risk involved in conducting such activities after conducting an audit subsequent to an employee injury and claim. The BWC also has the authority to change BWC classification codes regardless of how long the business was assigned the previous code.

{¶ 5} Relator also raises several issues with regard to the DVD video it submitted to the BWC claiming to show its operations. Despite relator's first complaint that the BWC failed to send an auditor to the business to personally view its operations before assigning the new code, relator fails to cite any authority requiring the BWC to do so. Also, that the BWC found in its June 21, 2016 decision that the video demonstrated "some" but "likely not all" of relator's operations was supported, at a minimum, by the fact that, as pointed out by the BWC, the video did not show the very activity—performing work on acetylene cylinders—that caused the injury that originally prompted the audit. Nevertheless, the magistrate's failure to mention the DVD in her findings of fact does not detract from her analysis and conclusions of law and we cannot find the BWC's skepticism of the comprehensiveness of the video was a factor that significantly impacted its decision to assign relator a new classification code. For these reasons, we find relator's first objection without merit.

{¶ 6} Relator argues in its second objection that the magistrate erred when she failed to address the arbitrary and capricious nature of the BWC's decision to change relator's manual code from 8720 to 3620. We disagree. Relator first claims there was no discussion by the magistrate concerning the fact that it was not engaged in the actual business of manufacturing despite the fact that code 3620 applies to manufacturers. To the contrary, the magistrate specifically noted that relator claimed the BWC's decision was arbitrary and capricious because it was not a manufacturer. The magistrate then cited and discussed the application of Ohio Adm.Code 4123-17-08(D)(7), which provides that where it is the business of an employer to repair products but no classification specifically refers to that type of repair work, the BWC must assign the classification that applies to the manufacturer of the product even when the employer does not manufacture any product. Thus, the magistrate did not ignore this issue. Relator's argument is without merit.

{¶ 7} Relator next claims the magistrate failed to discuss how the BWC could assign it new code 3620 after 11 years of operating under code 8720. We disagree. The magistrate specifically explained the BWC had auth0rity to change relator's classification code, regardless of how many years it operated under the prior code, based on the following: no NCCI classification specifically applies to relator's business; relator's business exposes workers to greater risks than contemplated by the prior classification code; the description

in the new classification code encompasses aspects of relator's business that more closely align to it than the description for the old classification code; courts generally defer to the BWC's judgment regarding its assignment of classification codes; and Ohio Adm.Code 4123-17-08(D)(7) applies to these circumstances. Relator also fails to explain why the length of time relator operated under the prior code is relevant and fails to cite any authority for the proposition that BWC's analysis or authority is affected by the length of time the employer operated under a prior code. Thus, this argument is without merit.

{¶ 8} Relator next claims the magistrate failed to discuss that it was the BWC and not relator that assigned code 8720 in 2004. However, relator fails to explain the relevance of this fact. Again, the length of time relator operated under the prior code is irrelevant. Furthermore, it is BWC's duty to assign classification codes under R.C. 4123.29(A)(1) and Ohio Adm.Code 4123-17-08; thus, that it was BWC that assigned the prior classification code is consistent with its requirement to do so. If relator's actual argument is that the BWC should somehow be estopped from changing the classification code based on an audit that shows the previously assigned code was in error, relator fails to cite any authority for such proposition, and it ignores that the very task of assigning classification codes is statutorily and administratively required of the BWC. For these reasons, we find relator's second objection without merit.

{¶ 9} Relator argues in its third objection that the magistrate erred when she failed to address relator's contention in its brief concerning the arbitrary and capricious nature of the BWC's comments that the DVD video contained some, but likely not all, of relator's operations. Relator already raised this issue in its first objection, and we rejected its argument. Based on the same reasons, we find relator's third objection without merit.

{¶ 10} Relator argues in its fourth objection that the magistrate erred when she concluded that Ohio Adm.Code 4123-17-08(D)(7) applies herein to "repair operations" when nowhere in any of the BWC orders on appeal did the BWC determine that the reason for placing relator into code 3620 was because it engaged in "repair operations," there was no evidence that relator engages in repair operations but only evidence that it inspects cylinders, and the BWC never found that its assignment of code 3620 was based on Ohio Adm.Code 4123-17-08(D)(7). We disagree with these contentions. Although the BWC did not cite a specific Ohio Administrative Code section, the magistrate showed that the BWC's

determination was supported by Ohio Adm.Code 4123-17-08(D)(7). Also, despite relator's claim that there was no evidence relator engaged in repair operations and that it only visually inspected cylinders, the record showed relator itself described its operations as including the repair of cylinders and replacement of parts on cylinders. Relator also confirmed that it removes paint from tanks, repaints tanks, and hooks up the tanks to depressurize them, all of which go beyond mere visual inspection. Furthermore, the nature of the burns and "explosion" involved in the allowed claim that prompted the audit in the present case, as well as that the injured employee's statement that he "opened up" a tank, demonstrates that relator's business activities involve more than visual inspection. Therefore, we find relator's fourth objection without merit.

{¶ 11} Relator argues in its fifth objection that the magistrate erred when she failed to address whether the BWC abused its discretion and erred as a matter of law by failing to discuss the hazards and risks of its business. Relator contends that the risks and hazards faced by relator are not commensurate with the risk and loss potential for other employers engaged in manufacturing operations under code 3620. Initially, we have already addressed the BWC's mandated application of classification codes for manufacturers of products to employers who repair the same products when there is no classification that specifically refers to that type of repair work, pursuant to Ohio Adm.Code 4123-17-08(D)(7). The magistrate specifically acknowledged there was no NCCI classification that applied to relator's business; thus, Ohio Adm.Code 4123-17-08(D)(7) provided the recourse for such situations. In addition, although the magistrate did not make a specific conclusion of law that addressed the risk and loss potential faced by relator's business compared to a boilermaker's business, the magistrate did note relator's argument that it was not a manufacturer so it should not be assigned code 3620 and also found that the exposure to risk involved in relator's business, which includes the risk of fire and explosion, was greater than the exposure to risk faced by the type of employers described in code 8720, such as real estate appraisers who only conduct visual inspections. The magistrate also included in its findings of fact the BWC's finding that the description under code 3620 includes cleaning and painting, which relator's business undertakes, and the description associated with code 3620 comes closer to describing the work that it performs than code 8720. Although the risks and potential losses relator faces might not be perfectly aligned with

those of the manufacturers described in code 3620, the BWC is specifically authorized to use the code for the product manufacturer code when there is no code available for the repairer of that product. Also, as acknowledged by the magistrate, citing *State v. Ohio Aluminum Industries, Inc. v. Conrad*, 97 Ohio St.3d 38, 2002-Ohio-5307, occupational classification is a difficult problem, and the employer has an uphill battle to contest it, given the BWC's wide range of discretion in determining which code best describes the employer's business. When the risk and potential for loss fits imperfectly between classifications, such as here, the appropriate classification is best left to the discretion of the BWC. For these reasons, we find relator's fifth objection without merit.

{¶ 12} Relator argues in its sixth objection that the magistrate erred when she found relator was asking this court to determine a wholly new manual classification code. In the magistrate's decision, the magistrate concluded the decision by stating it was not the magistrate's duty to comb through the NCCI manual to see if a different classification code might be more appropriate. Relator argues that it has not requested such relief from this court but, instead, requests this court order the BWC to reclassify relator's classification code from 3620 back to its original code of 8720.

{¶ 13} However, we do not read this portion of the magistrate's decision the same as relator. In the paragraph preceding the magistrate's above statement, the magistrate discussed its conversation with relator's counsel at the hearing regarding whether relator had suggested any other classification that might be a better fit. After noting that relator did not obtain counsel until after the BWC reached its decision, the magistrate indicated it had referred the parties to mediation in hopes that the parties could review the NCCI manual to find a classification that better fits relator's business. The magistrate's subsequent statement that it was not the magistrate's duty to comb the manual to see if there was a better classification was in reference to the parties' failed attempt to do so. In addition, it is clear from the opening paragraph of the magistrate's decision that the magistrate was aware that relator was requesting the BWC change the manual classification code back to 8720. For these reasons, we find relator's sixth objection without merit.

{¶ 14} Accordingly, after an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's

objections, we overrule relator's six objections. We adopt the magistrate's findings of fact and conclusions of law.  Relator's request for a writ of mandamus is denied.

*Objections overruled;*
*writ of mandamus denied.*

DORRIAN, P.J., and SADLER, J, concur.

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

The State ex rel.                                          :
American Cylinder Enterprises, Inc.,
                                                          :
          Relator,
                                                          :
v.                                                                    No.  17AP-831
                                                          :
Sarah Morrison, Administrator,                                       (REGULAR CALENDAR)
Ohio Bureau of Workers' Compensation,   :

          Respondent.                                     :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 14, 2019

---

*Reminger Co., L.P.A.,* and *Kevin R. Sanislo,* for relator.

*Dave Yost,* Attorney General, and *John Smart,* for respondent.

---

IN MANDAMUS

{¶ 15} Relator, American Cylinder Enterprises, Inc., has filed this original action requesting this court issue a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC"), to vacate its order which changed relator's manual classification code from 8720 to 3620, and ordering the BWC to change the manual classification back to 8720.

Findings of Fact:

{¶ 16} 1.  For approximately 11 years prior to the audit which is the subject matter of this mandamus action, relator's employees were assigned National Council on Compensation Insurance ("NCCI") manual classification 8720.  This classification applies

to real estate appraisers, insurers, and others who appraise property for claim purposes in part because relator's employees inspected pressurized cylinders.

{¶ 17}  2.  After one of relator's employees was severely burned by what the employee described as an exploding cylinder, the BWC began an audit to determine whether the manual classification assigned to relator accurately reflected the degree of hazard involved in its business.  The employee explained that he opened up a tank to let it bleed out.  The tank exploded which caused second-degree partial thickness burns to his right forearm.  Although the employee's workers' compensation claim was allowed for those conditions, relator challenged the claim arguing the employee had caused the incident by using the wrong tools.

{¶ 18}  3.  Following an internal referral, the BWC conducted a premium audit to determine whether or not relator's employees were properly classified.  In the audit, the BWC described relator's operations as follows:

> Insured refurbishes acetylene tanks for requalification and propane cylinder testing. Insured will inspect the equipment, change valves, replace bad parts, hydro testing.

{¶ 19}  4.  Prior to the audit, these employees were classified under NCCI code 8720 which applies to insurance inspectors, outside claims adjustors, includes inspections of roofs, crawl spaces, sub-basements, etcetera.  Following the audit, relator was transferred to NCCI code 3620 which is titled boiler making and includes companies which are engaged in manufacturing.

{¶ 20}  5.  Relator's protest was heard before the adjudicating committee of the BWC on June 21, 2016.  At the outset, the adjudicating committee set forth the position of both the BWC and relator.

### Bureau's Position

> The BWC representative stated that when he audited the employer, the employer was reporting its employees under the code mainly used for insurance inspecting. The auditor stated that this employer had a previous claim that occurred when an employee opened up a tank and it exploded. The auditor indicated that the "boilermaking" classification is more appropriate and has been assigned to a competing employer. The auditor noted that while the term boilermaking

may not describe the employer, the actual narrative associated with the classification comes closer to describing the work that the employer performs. The auditor indicated that the new classification was made prospective due to previous audits.

### [Relator's] Position

At the hearing the employer's representatives stated the employer does not do hydrostatic testing of cylinders, but rather visual inspection only. This is contrary to what the auditor stated. The employer originally used a manual classification other than 8720, but was told to use code 8720 due to a prior audit. The employer has used that code for approximately the past 15 years. The representatives emphasized that the auditor did not come to its facility, but rather met with the CPA.

The main point of manual 3620 is that it involves manufacturing. The employer does not manufacture any cylinders and only inspects the cylinders. That is the exact description used in manual code 8720.

Also, the employer stated that they do not have any competitors that do exactly what this employer does. The competitors may purchase, service, and resell cylinders. This employer only services and inspects cylinders. The employer tests products and if a valve is bad, it exhausts the product before replacement. The employer may paint the cylinders using a paint gun.

{¶ 21} After stressing the purpose of the classification system is to assign the classification that best describes the business of the employer, the adjudicating committee denied relator's protest and upheld the change of relator's classification to 3620, stating:

In this particular case, at the time that 8720 was assigned, it appeared to be the "best fit" for work which may not be described exactingly under any of the NCCI manual classifications. In looking at the heading for 8720, one would note that the manual contemplates inspection by insurance type or other appraisers. The scope also references building hazards, and includes both boiler and elevator "inspection staffs" and distinguishes those from crews that actually install and repair elevators or boilers.

At first glance, "the heading" for manual 3620, "boilermaking," is even less descriptive of this particular employer than is the inspection heading. Nevertheless, when looking at the actual scope, one sees the term "pressure vessels," which clearly describes the product that this employer is working with. More importantly, the processes involved under 3620 include both cleaning and painting, which is exactly the type of work that is described by the employer and shown in its short video. Given the nature of the products that this employer inspects, which includes both cleaning and painting, the Committee agrees with the auditor that 3620 "best describes" this employer's operations.

{¶ 22} 6. Relator appealed and the matter was heard before the administrator's designee on October 13, 2016. The administrator's designee upheld the determination, stating:

Here, BWC's auditor concluded that manual code 3620 was the best fit for American Cylinder, based on the type of work American Cylinder performs, particularly with regard to pressure vessels. Manual code 3620 is entitled "Boilermaking" and its scope is as follows:

Boilermaking and tank building—metal—shop. Code 3620 is applied to insureds engaged in manufacturing various types of plate steel tanks, boilers, gas holders, whiskey stills, pressure vessels, smokestacks, heat exchangers, gas dehydrators, garbage dumpsters and air cleaning equipment. The materials used in the process include iron, steel or stainless steel plates, channel iron, I-beams, round and square bars, etc. The materials are laid out, marked, power-sheared or torch-cut to size, power-braked or rolled and formed, drilled, punched and assembled into the final product by welding, grinding, cleaning and painting.

Military tank hull manufacturing or assembly. Code 3620 covers insureds who fabricate or assemble armor plate into military tank bodies or hulls. It also covers armor plate processing. Such processing includes the cutting, forming or heat-treating and machining of the armor plate.

Under the NCCI codes, manual code 3720 is found under Industry Group 3, which pertains to the Manufacturing industry. In contrast, the prior manual code, 8720, is entitled "Inspection of Risks for Insurance or Valuation Purposes NOC

[not otherwise classified]." This code is listed within Industry Group 8, which pertains to the Service industry under the NCCI codes. Its description, in part, is below:

Code 8720, a "not otherwise classified" classification, is applicable to insurance inspectors, outside claims adjusters, and/or safety engineers; appraisers of fire companies engaged in estimating the salvage value of property; and employments of a similar character.

Code 8720 includes insureds that perform physical inspections of property. Physical inspections include but are not limited to activities such as inspections of roofs or attic crawl spaces; subbasement inspections; or inspections of equipment such as boilers, furnaces, or electrical systems. Refer to Code 8721-Real Estate Appraisal Companies for firms that evaluate real estate to determine the market value of same, but as part of their appraisal efforts, do not engage in the types of inspections described above.

The auditor assigned what was determined to be the most appropriate manual code based [on] American Cylinder's operations, which were noted in the audit to be "refurbish[ing] acetylene tanks for requalification and propane cylinder testing. Insured will inspect the equipment, change valves, replace bad parts, hydro testing. Insured will then repaint the cylinders." The employer confirmed at the Administrator's Designee hearing that it inspects the tanks for dents or corrosion, removes paint, if needed, re-paints the tanks, hooks up the tanks to depressurize them, and inspects and replaces valves, but disputed that it did any kind of hydrostatic testing. However, the fact that American Cylinder does not do hydrostatic testing is not dispositive of whether BWC appropriately reclassified its manual code. Rather, the types of manipulation to the pressurized vessels that American Cylinder does, such as refurbishing tanks, depressurizing tanks to replacing bad valves, and repainting the tanks for reuse is what led the auditor to conclude that manual code 3620, which specifically references the manufacturing, cleaning, and painting of pressure vessels, was the best fit.

At the Administrator's Designee hearing, American Cylinder asserted that no NCCI manual code exists that adequately describes its operations and it has requested to be able to continue to report payroll under manual code 8720. However,

that code, which contemplates visual inspections done by inspectors in the insurance industry, does not encompass the risk of this particular employer's work or the hazards it encounters when it works with pressurized tanks. In fact, the auditor stated at the hearing that a worker at American Cylinder was injured when he "opened up a tank" and it exploded, for which there is an allowed claim. While the auditor acknowledged that the term "boilermaking" may not describe American Cylinder's operations, the narrative description associated with the code comes closer to describing the work that it performs and assigned the code to be used prospectively.

{¶ 23} 7. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 24} For the reasons that follow, it is this magistrate's decision that this court should uphold the decision of the administrator's designee.

{¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 26} R.C. 4123.29 applies to the classification of occupations for industries and provides in pertinent part:

> (A) The administrator of workers' compensation, subject to the approval of the bureau of workers' compensation board of directors, shall do all of the following:

(1) Classify occupations or industries with respect to their degree of hazard and determine the risks of the different classes according to the categories the national council on compensation insurance establishes that are applicable to employers in this state.

{¶ 27} Ohio Adm.Code 4123-17-08 supplements R.C. 4123.29and provides, in relevant part:

In accordance with division (A)(1) of section 4123.29of the Revised Code, the purpose of this rule is for the bureau of workers' compensation to conform the classifications of industries according to the categories the national council on compensation insurance (NCCI) establishes that are applicable to employers in Ohio.

(A) Classification system.

(1) The purpose of the classification system is to group employers with similar operations into classifications so that:

(a) The assigned classification reflects the exposures common to those employers.

(b) The rate charged reflects the exposure to loss common to those employers.

* * *

(D) Classification procedures. The purpose of the classification procedure is to assign the one basic classification that best describes the business of the employer within a state. Subject to certain exceptions described in this rule, each classification includes all the various types of labor found in a business.

{¶ 28} In the present case, the biggest problem is that there is no NCCI classification that specifically applies to relator's business. Although relator had argued that its employees did not perform any hydrostatic testing but only visual inspection, the employee's injuries show that more than visual inspection occurs. Given the exposure to an explosion and fire which can injure employees, it is clear that relator's business encompasses more than what is included under code 8720. The visual inspections conducted by people such as real estate appraisers does not expose them to this type of risk.

As such, it was incumbent on the BWC to consider the business of relator and find the classification which, in the BWC's opinion, was the best fit.

{¶ 29} In *State ex rel. Ohio Aluminum Industries v. Conrad,* 97 Ohio St.3d 38, 2002-Ohio-5307, a case involving an employer's challenge to the BWC's manual reclassification, the Supreme Court of Ohio acknowledged that the court will generally defer to the BWC's judgment regarding the use of its discretion to assign proper manual classifications, stating:

> Section 35, Article II of the Ohio Constitution authorizes the board to "classify all occupations, according to their degree of hazard * * *." Implemented by what is now R.C. 4123.29(A)(1), the result is the Ohio Workers' Compensation State Fund Insurance Manual. The manual is based on the manual developed by NCCI and has hundreds of separate occupational classifications. See Ohio Adm.Code 4123-17-04, Appendix A. It also specifies the basic rate that an employer must pay, per $100 in payroll, to secure workers' compensation for its employees. See Ohio Adm.Code 4123-17-02(A).
>
> * * *
>
> OA has an uphill battle from the outset. That is because "the bureau is afforded a 'wide range of discretion' in dealing with the 'difficult problem' of occupational classification." *State ex rel. Roberds, Inc. v. Conrad* (1999), 86 Ohio St. 3d 221, 222, 714 N.E.2d 390, quoting *State ex rel. McHugh v. Indus. Comm.* (1942), 140 Ohio St. 143, 149, 23 Ohio Op. 361, 42 N.E.2d 774. Thus, we have "generally deferred to the [bureau's] expertise in premium matters" and will find an abuse of discretion "only where classification has been arbitrary, capricious or discriminatory." *State ex rel. Progressive Sweeping Contrs., Inc. v. Ohio Bur. of Workers' Comp.* (1994), 68 Ohio St. 3d 393, 396, 627 N.E.2d 550. We find that the present declassification was reasonable.

*Id.* at ¶ 17, 20.

{¶ 30} Throughout this adjudication and in its brief before this court, relator acknowledges there is no NCCI code that exactly describes the nature of its business. Further, relator contends the use of a code provision for manufacturing is arbitrary and capricious because they do not manufacture anything.  However, Ohio Adm.Code 4123-17-

08(D)(7) provides that where it is the business of an employer to repair products but no classification specifically refers to that type of repair work, the BWC must assign the classification that applies to the manufacturer of the product even where the employer does not manufacture any product. Specifically, that portion provides:

> Repair operations. Risks with shop operations that involve the repair of a product for which there is no repair classification are assigned to the classification that applies to the manufacture of the product, unless this repair work is specifically referred to by another classification, footnote, or definition in the manual.
> Example of repair operations that are classified to the manufacturing code:
>
> (a) A pump repair business is assigned to code 3612 (pump mfg.). There is no separate code for pump repair.
>
> (b) A motor repair business is assigned to code 3643 (electric power or transmission equipment mfg.). There is no separate code for motor repair.

{¶ 31} Relator also asserts there is no explanation in the BWC's orders explaining why the classification was changed. Although relator's business was classified under code 8720 for many years, it was the injury to the employee inspecting tanks as part of his work assignment that led to the audit which led to the change in classification. As such, relator was aware why the classification was reviewed and why it was changed.

{¶ 32} At oral argument, the magistrate asked counsel for relator if any other classification had been suggested to the BWC by relator. Counsel responded that relator had not sought legal representation until after the BWC reached its decision. In the hopes the parties could review the NCCI manual and find a classification which better fit relator's business, the magistrate suggested mediation and the parties agreed. Unfortunately, the parties did not reach an agreement.

{¶ 33} It is not the duty of this court to comb through the NCCI manual and see if a different classification might be more appropriate. We have no expertise in such matters. Because of the presumption of regularity afforded to determinations of the BWC, this magistrate cannot say that relator has a clear legal right and the BWC has a clear legal duty to either allow relator to remain under NCCI code 8720 or select a code other than NCCI

code 3620.  Relator has failed to demonstrate the BWC abused its discretion and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).