[Cite as *State ex rel. Accurate Inventory & Calculating Servs. v. Buehrer*, 2016-Ohio-7004.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| State of Ohio ex rel. Accurate Inventory & Calculating Services, Inc., | : | |
| | : | |
| Relator, | : | |
| v. | : | No. 14AP-1008 |
| Stephen Buehrer, Administrator/ CEO, the Ohio Bureau of Workers' Compensation, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |

D E C I S I O N

Rendered on September 27, 2016

*Garvin & Hickey, LLC, Preston J. Garvin, Daniel M. Hall,* and *Sandee E. Reim,* for relator.

*Michael DeWine,* Attorney General, and *John Smart,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Accurate Inventory & Calculating Services, Inc., commenced this original action in mandamus seeking an order compelling respondent, the administrator of the Ohio Bureau of Worker's Compensation ("bureau"), to vacate the May 6, 2014 order of the administrator's designee denying relator's protest of the bureau's audit of the period July 1, 2012 to June 30, 2013, in which the bureau activated operational manual

8725 and removed manuals 8720 and 8810 from the policy, and to enter an order that grants relator's protest.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that under the circumstances presented, Ohio Adm.Code 4123-17-08(B) prohibits relator from being assigned one basic classification (manual 8725) and one standard exception classification (manual 8810) as sought by relator. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision. In its first objection, relator argues that the magistrate erred when he found that relator must meet all three of the conditions set forth in Ohio Adm.Code 4123-17-08(D)(3)(a) through (D)(3)(c). We disagree.

{¶ 4} First, by its express terms, Ohio Adm.Code 4123-17-08(D) requires that for more than one basic classification to be assigned to an insured, the insured must meet all three conditions set forth in Ohio Adm.Code 4123-17-08(D)(3)(a) through (D)(3)(c). To the extent that the state insurance fund manual conflicts with the language of Ohio Adm.Code 4123-17-08(D)(3), the code provision is controlling.

{¶ 5} Second, as noted by the magistrate, relator's argument is a red herring because relator does not actually seek the application of more than one basic classification. Rather, relator seeks to be assigned one basic classification (manual 8725) and one standard exception classification (manual 8810). As noted by the magistrate, Ohio Adm.Code 4123-17-08(B) prohibits the assignment of standard exception manual 8810 to relator because basic classification manual 8725 expressly includes clerical office employees.

{¶ 6} For these reasons, we overrule relator's first objection.

{¶ 7} In its second objection, relator argues the magistrate erred when he failed to address two additional arguments advanced by relator: (1) the administrator's designee erred when he suggested that if relator divested itself of its Ohio inventory business, or established the Ohio inventory workers as a separate and distinct corporation, it is likely that relator would qualify for manual 8810; and (2) that Ohio Adm.Code 4123-17-08(D)

violates equal protection by limiting the types of employers or operations that are permitted to report employees under more than one manual classification without justification.   However, relator makes no attempt to explain why either of these arguments have merit.  Nor does relator cite any statutory or case authority supporting these arguments.

**{¶ 8}**   Although we agree that the magistrate did not expressly address these arguments, the arguments lack merit on their face and do not support the grant of a writ of mandamus.  Therefore, we overrule relator's second objection.

**{¶ 9}**   Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

TYACK and SADLER, JJ., concur.

————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Accurate Inventory & Calculating<br>Services, Inc., | : | |
| | : | |
| Relator, | : | |
| v. | : | No. 14AP-1008 |
| Stephen Buehrer, Administrator/<br>CEO, the Ohio Bureau of<br>Workers' Compensation, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on May 26, 2016

---

*Garvin & Hickey, LLC, Preston J. Garvin, Daniel M. Hall,* and *Sandee E. Reim,* for relator.

*Michael DeWine,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 10} In this original action, relator, Accurate Inventory & Calculating Services, Inc. ("Accurate Inventory"), requests a writ of mandamus ordering respondent, the Administrator of the Ohio Bureau of Workers' Compensation ("administrator" or "bureau"), to vacate the May 6, 2014 order of the administrator's designee that denied relator's protest of the bureau's audit of the period July 1, 2012 to June 30, 2013 in which the bureau activated operational manual 8725 and removed manuals 8720 and 8810 from the policy, and to enter an order that grants relator's protest.

Findings of Fact:

{¶ 11} 1. Relator provides physical inventory audits for gas stations and convenience stores. It currently employs 31 people in Ohio. Fourteen of those are clerical support staff and seventeen are auditors who work at gas stations and convenience stores in Ohio.

{¶ 12} 2. Accurate Inventory employs approximately 186 auditors in 34 states and the District of Columbia. There are no additional support staff employees in other states. The headquarters of Accurate Inventory is located in Columbus, Ohio. Thus, the support staff provide support to relator's auditors nationwide.

{¶ 13} 3. In late October 2013, the bureau's underwriting department completed an audit of relator for the period July 1, 2012 to June 30, 2013.

{¶ 14} 4. By letter dated November 27, 2013, the bureau's director of underwriting informed relator that manual 8725 was being activated effective July 1, 2013 and that relator was to no longer report payroll under manuals 8720 and 8810.         5. Prior to 1993, the bureau used its own system to categorize operations. In 1993, the Ohio Legislature required the bureau to replace this system with the classifications used by the National Council on Compensation Insurance ("NCCI"). *See* R.C. 4123.29(A)(1).

{¶ 15} 6. Prior to the bureau's audit, relator had for many years reported its payroll under manuals 8720 and 8810.

{¶ 16} 7. The NCCI phraseology for manual 8720 is "INSPECTION OF RISKS FOR INSURANCE OR VALUATION PURPOSES NOC."

{¶ 17} 8. The NCCI manual phraseology for manual 8810 is "CLERICAL OFFICE EMPLOYEES NOC."

{¶ 18} 9. The NCCI activated manual 8725, effective July 1, 2010. The NCCI phraseology is "INVENTORY COUNTERS—TRAVELING—INCLUDING SALESPERSONS & CLERICAL."

{¶ 19} 10. By letter dated December 6, 2013, the bureau's underwriting department notified relator that the audit findings have been affirmed and that relator could appeal to the adjudicating committee under R.C. 4123.291.

{¶ 20} 11. On December 13, 2013, on a form provided by the bureau (Legal-15) relator filed an "Application for Adjudication Hearing."

{¶ 21} 12. On December 23, 2013, the secretary of the adjudicating committee issued a document captioned "STATEMENT OF PROTEST."  The document states:

> **Background Facts and Issues Presented:** The Bureau audited the employer, for the period from July 1, 2012 to June 30, 2013. The auditor found that the employer should have reported certain employees under its operational manual 8725. Instead, the employer had reported the payroll to 8810 (Clerical Office).
>
> The employer protested the finding and requested a hearing before the Adjudicating Committee.

{¶ 22} 13. On January 8, 2014, the bureau's three-member adjudicating committee ("AC") heard relator's protest.  The hearing was not recorded.  Thereafter, the AC issued an order denying the protest.  The AC order explains:

> **Background Facts and Issues Presented:** The bureau audited the employer for the period from July 1, 2012 to June 30, 2013. Prior to the audit, the employer had operational manual 8720 and manual 8810 for clerical employees. The audit activated operational manual 8725 and removed 8720 and 8810 from the policy because manual 8725 include[d] clerical office employees. The employer protested the finding and requested a hearing before the Adjudicating Committee.
>
> * * *
>
> **<u>Employer's Position</u>:** The employer provides physical inventory audits for gas stations and convenience stores. There are 31 employees in Ohio with 14 being support staff workers that work in an office environment. The company operates in 55 markets around the country and in 35 states. The degree of hazard faced by the office workers are much lower than the hazard faced by the field staff. The clerical office employees have never suffered a worker's compensation claim injury. Moving the clerical staff payroll to the operational manual creates a 1,849% increase in premiums.
>
> **<u>Bureau's Position</u>:** The employer was assigned basic manual 8725, which includes clerical work. Manual 8810 was removed from the policy because the 8810 employees are specifically included within the phraseology of the basic classification. NCCI Scopes considers manual 8725 a

composite manual classification. Code 8810 is only applied to clerical office employees provided they are not otherwise classified in the basic manual.

**Findings of Fact and Conclusion of Law:**

In order to make a decision on the classification issue, a brief history of the setting of manual classifications must be discussed. Prior to 1993, the bureau used its own system to categorize operations. In 1993, the legislature required the bureau to replace this system with the classifications used by the National Council on Compensation Insurance ("NCCI"). See RC 4123.29 (A)(1); Am.Sub.H.B. No. 107, 145 Ohio Laws, Part II, 3113. Under RC 4123.29(A)(1), "...subject to the approval of the bureau of workers' compensation board of directors," the duties of the Administrator include [c]lassify[ing] occupations or industries with respect to their degree of hazard and determin[ing] the risks of the different classes according to the categories the national council on compensation insurance establishes that are applicable to employers in this state[.]"

Ohio Adm.Code 4123-17-08(D), in implementing the NCCI classifications, states, "The purpose of the classification procedure is to assign the one basic classification that best describes the business of the employer within a state. Subject to certain exceptions described in this rule, each classification includes all the various types of labor found in a business." Per 4123-17-08, "[t]he purpose of the classification system is to group employers with similar operations into classifications so that [t]he assigned classification reflects the exposures common to those employers [and] [t]he rate charged reflects the exposure to loss common to those employers." Additionally, "[s]ubject to certain exceptions, it is the business of the employer within a state that is classified, not separate employments, occupations or operations within the business." Ohio Adm.Code 4123-17-08 (A)(1) & (2).

The NCCI manual description for 8810 states the manual is to be used unless the clerical employees are specifically included in the phraseology of a basic classification:

**PHRASEOLOGY** CLERICAL OFFICE EMPLOYEES NOC
**Description:**

Code 8810 is applied to clerical office employees provided they are not otherwise classified in the Basic Manual. * * * Code 8810 employees are common to so many businesses that they are considered to be Standard Exceptions *unless they are specifically included within the phraseology of a basic classification.* * * *

Prior to the audit, the policy had manual 8720 for its operational manual which does not include clerical employees within the phraseology of the classification. Therefore, manual 8810, a standard exception manual, was appropriate to use when 8720 was the operational manual. Ohio Adm.Code 4123-17-08(B)(2)(a) provides manual 8810 is assigned when "the basic classification(s) wording applicable to the business does not include clerical office, drafting or telecommuting employees..."

NCCI activated manual 8725 for use effective July 1, 2010 which includes clerical in its phraseology:

**"PHRASEOLOGY** INVENTORY COUNTERS-TRAVELING-INCLUDING SALESPERSONS & CLERICAL."

Ohio Adm.Code 4123-17-08(C)(2)(d) also instructs how clerical employees are treated when the phraseology has "Includes" or "&."

If the classification wording uses the terms "includes" or "&," the operation or employees cited after those terms must not be assigned to a separate classification. This applies even though the operation or employees may be described by another classification or are at a separate location.

Examples of classification that include the terms "includes" or "&":

* * *

(iii) Code 8832 (physician & clerical); all clerical employees must be included in this classification.

The NCCI classifications are used in 38 states so manual classification 8725 would be assigned in one of these 38 states. There is no dispute that manual 8725 best describes the business of the employer.

The payroll history for this employer's policy reflects that the rate in the first half of 2013 for manual 8810 was 0.002426 and the rate for manual 8725 was 0.047197. The bulk of the employer's payroll had been reported to manual 8810 so the change in manual classification did cause a large increase in premiums. This Committee, however, has no discretion to deviate from the classes established by NCCI or manipulate established rates. In workers' compensation systems, each classification determines its own rate. Generally, the total losses of each classification, when compared to the total payroll of the classification, produce the rate of contribution from the employers within that classification. Over time the loss experience in manual 8725 may lower which in turn would lower the rate for the manual.

Another factor that affects premiums is the experience modifier. An employer who has a better than average loss experience receives a credit against the basic rate for its classification, and conversely, an employer who has a bad loss experience is penalized and has to pay a rate higher than the basic rate. The employer was debit rated at 1.37 in the first half of 2013 so the higher premiums are also attributable to the employer's above average loss experience.

### *Conclusion*

The Adjudicating Committee DENIES the employer's protest. The employer was properly assigned manual classification 8725 which includes clerical office workers within the classification. Therefore, as discussed above, manual 8810 cannot be assigned as a separate classification.

(Emphasis sic.)

{¶ 23} 14. Relator administratively appealed the AC order to the administrator's designee pursuant to R.C. 4123.291.

{¶ 24} 15. On May 6, 2014, Barrett Crook, the Vice President of Accurate Inventory, executed an affidavit which relator submitted to the administrator's designee. The Crook affidavit avers:

[Two] Accurate Inventory is a company that specializes in providing physical inventory audits at convenience stores. Accurate Inventory has approximately 200 employees and we perform these services in 34 states and the District of Columbia.

[Three] Accurate Inventory is headquartered in Columbus, Ohio. We have a support staff of approximately 14 people who provide clerical and office support for the approximately 186 employees who perform services in the 34 different states and the District of Columbia. The office and clerical employees work at our corporate offices * * *. These 14 employees account for approximately 70% of our Ohio payroll.

[Four] Of the 186 employees who are in the field performing inventory work, only 14 perform that work in the state of Ohio. They account for approximately 30% of our Ohio payroll. If we cease performing inventory work in Ohio, we would still need our office and clerical employees to provide support for the 172 employees in the other 33 states and the District of Columbia. A small percentage of our inventory work is performed in the state of Ohio. We have received advice that, for workers' compensation purposes, we should divest ourselves of our Ohio inventory operations. If we were to do so, our Ohio office and clerical personnel would continue to function to support the other employees.

{¶ 25} 16. Also on May 6, 2014, L. Jeffrey Kemo, executed an affidavit which relator submitted to the administrator's designee. The Kemo affidavit avers:

[One] I am the Senior Account Representative of Compensation Solutions, Inc. Prior to joining Compensation Solutions, Inc. I was the Chief Underwriter in the state funded department at Frank Gates Service Company for 26 years. Prior to my service at Frank Gates Service Company I was employed by the Ohio Bureau of Workers' Compensation as a Deputy Underwriter. I have counseled employers on manual classification and rates. I am familiar with the NCCI classifications, having worked with them since they were adopted by the Ohio Bureau of Workers' Compensation.

[Two] I have reviewed the facts of Accurate Inventory and Calculating Service, Inc. This company is not a client of Compensation Solutions, Inc. I have been asked to review the facts and give my opinion on the proper manual classifications for the company's operations.

[Three] The facts presented in the Accurate Inventory company situation are very unusual.

[Four] The NCCI manual classifications provide that the employer's primary business operations should be assigned the manual classification. Support staff such as office and clerical are generally considered incidental payroll to support the overall operation. Therefore, the incidental payroll is included in the primary classification. However, the code provides for exceptions as set forth at 4123-17-08 (D) (3).

[Five] Accurate Inventory is unusual in that its primary operation in Ohio is office and clerical. This is due to the fact that the office and clerical employees provide support to employees in 34 markets outside of Ohio.

[Six] It is my opinion that Accurate Inventory meets the criteria for an exception under OAC 4123-17-08 (D) (3) (c) (i) (a) (b) (c). Accurate Inventory conducts more than one operation in Ohio. The rule provides that to qualify for a separate classification, the insured's additional operation must (a) be able to exist as a separate business if the insured's principal business in the state ceased to exist. Clearly the clerical operations would continue existing in Ohio even if the inventory business ceased to exist in Ohio.

[Seven] The second provision of the rule provides that the operations must be physically separate. In the Accurate Inventory situation the inventory work is done at the customer's place of business, namely convenience stores. The office and clerical employees are not physically connected to the inventory operations. The office work is performed at a separate location.

[Eight] The last provision states that there must be separate payroll records. That is clearly the case here. It is my understanding that Accurate Inventory has been keeping separate payroll records for the office and clerical for many years.

[Nine] Therefore, based on the foregoing it is my opinion that Accurate Inventory meets the criteria for separate manual classifications.

{¶ 26} 17. On May 6, 2014, the administrator's designee heard relator's appeal from the AC order. The hearing was not recorded. Thereafter, the administrator's designee issued a six-page order that denies relator's appeal, but modifies the decision of the AC.

{¶ 27} 18. The May 6, 2014 order of the administrator's designee, states:

> This case involves a relatively simple issue, whether Accurate Inventory is entitled to use multiple manuals for its employees to more precisely categorize their risk, or whether Accurate Inventory must use a composite manual at the same manual rate that includes all of its Ohio employees, even if those employees are subject to different risks.
>
> The manual classifications in question are manuals 8720, 8810, and 8725. As indicated in the Adjudicating Committee order, Accurate Inventory originally reported its employees under manuals 8720 and 8810. In 2010, the NCCI and the Bureau adopted a new manual, 8725, that better describes the nature of Accurate Inventory's business. Manual 8725 specifically includes clerical employees of the business in the manual:
>
> **8725**
>
> **PHRASEOLOGY:**   INVENTORY   COUNTERS   - TRAVELING - INCLUDING  SALESPERSONS <u>& CLERICAL</u>
>
> **Description:**
>
> Code 8725 is applicable to inventory-counting firms that are hired by others to provide a count or value of inventory for single or multiple locations of a client. The information can be gathered manually with pen and paper, voice recorder, or specialized handheld computers that are usually attached to a belt loop and rest on the thigh of a user for easy data entry. Counts can be completed during business hours or while locations are closed. Businesses using inventory-counting services can range from gasoline stations with a small amount of retail items, to wholesale and department stores of various sizes, to warehouse distributors. These counts can be on a one-time basis or on a regular basis for quarterly review or year-end count and valuation of inventory. ... (emphasis added)
>
> Note that the basic description of manual 8725 includes clerical employees: "Phraseology: inventory counters-traveling - <u>including salespersons & clerical</u>" (emphasis added). An employer may not use manual 8810 if it is included in the basic description of the employer's business:
>
> **8810**

**PHRASEOLOGY:** CLERICAL OFFICE EMPLOYEES NOC

**Description:**

Code 8810 is applied to clerical office employees provided they are not otherwise classified in the ***Basic Manual***. Clerical employees who perform telecommuting activities may qualify for Code 8871—Clerical Telecommuter Employees. Refer to Code 8871's scope for conditions under which a telecommuting employee's pay should be assigned to this code.

Code 8810 employees are common to so many businesses that they are considered to be Standard Exceptions <u>unless they are specifically included within the phraseology of a basic classification</u>. ... (emphasis added).

Accurate Inventory testified that it is in the business of conducting convenience store inventories for contract clients. Accurate Inventory has approximately 200 employees in 34 states, including Ohio (May 6, 2014, Affidavit of Barrett Crook, Vice President of Accurate Inventory, at ¶ 2). Accurate Inventory has its headquarters in Columbus, Ohio, and has about 14 clerical support staff in Columbus, and also approximately 14 Ohio Inventory workers. The 14 clerical staff workers account for approximately 70% of the Ohio payroll (see Crook Affidavit, ¶ 3). Accurate Inventory testified that even if they did no inventory work in Ohio, they would still have and need the support staff to provide support for the inventory workers in the other states where they do business (see Crook Affidavit, ¶ 4).

Accurate Inventory submitted the May 6, 2014, Affidavit of L. Jeffrey Kemo, asserting that Accurate Inventory qualified to use manual 8810 as a standard exception. Accurate Inventory states that it is operating two separate businesses in Ohio; one that does inventory calculating and another that does the corporate office support for the overall business operations in multiple states. Kemo's Affidavit states that Accurate Inventory qualifies for a standard exception under rule 4123-17-08(D)(3)(c)(i)(*a*) to (D)(3)(c)(i)(*c*). Kemo states that Accurate Inventory's clerical services would still be able to exist, to support the operations in other states, if they were to eliminate the inventory counters in Ohio. Kemo also states that there is a separation of businesses and that the

fact that the office employees operate in the office and the inventory counters operate on location meets the separation required by the rule (see Kemo Affidavit, ¶ 6 and ¶ 7).

The Bureau representative stated that the Bureau assigned manual 8725 after an audit. The Bureau's representative believes that the exception to the rule does not apply, since the clerical duties could not exist without the existence of the inventory counters. Therefore, the business cannot be considered to be two separate operations.

Rule 4123-17-08, "Classifications according to national council on compensation insurance," provides the basic Bureau rules for determining an employer's manual classifications, and contains the language referenced in the Kemo Affidavit in support of Accurate Inventory's quest to retain manual 8810. Paragraph (D) of the rule provides:

(D) Classification procedures.

The purpose of the classification procedure is to assign the one basic classification that best describes the business of the employer within a state. Subject to certain exceptions described in this rule, each classification includes all the various types of labor found in a business.

It is the business that is classified, not the individual employments, occupations or operations within the business.

Certain exceptions apply and are noted below...

(3) Assignment of more than one basic classification.

More than one basic classification may be assigned to <u>an insured who meets conditions set forth in paragraphs (D)(3)(a) to (D)(3)(c) of this rule</u>. Operation means activities, enterprises, processes, secondary businesses or undertakings.

(a) The insured's principal business is described by a basic classification that requires certain operations or employees to be separately rated.

<u>(b) The insured conducts one or more of the following operations:</u>

<u>(i) Construction or erection.</u>

(ii) Farming.

(iii) Employee leasing, labor contracting, temporary labor services.

(iv) Mercantile business.

(c) The insured conducts more than one operation in a state.
(i) For purposes of this rule, an insured is conducting more than one operation in a state if portions of the insured's operations in that state are not encompassed by the classification applicable to the insured's principal business. To qualify for a separate classification, the insured's additional operation must:

(*a*) Be able to exist as a separate business if the insured's principal business in the state ceased to exist.

(*b*) Be located in a separate building, or on a separate floor in the same building, or on the same floor physically separated from the principal business by structural partitions. Employees engaged in the principal business must be protected from the operating hazards of the separate additional operations.

(*c*) Maintain proper payroll records. Refer to paragraph (F)(2) of this rule on maintenance of proper payroll records.

Note that the rule requires that the employer must meet all three of the "conditions set forth in paragraphs (D)(3)(a) to (D)(3)(c)" of the rule. Even if the Administrator's Designee agrees that Accurate Inventory satisfies the criteria of rule 4123-17-08(D)(3)(c)(i)(*a*) to (D)(3)(c)(i)(*c*) as asserted in the Kemo Affidavit, Accurate Inventory must also meet the criteria of rule 4123-17-08(D)(3)(a) and (D)(3)(b). Simply stated, the rule only applies to the businesses mentioned in paragraph (D)(3)(b): construction or erection; farming; employee leasing, labor contracting, temporary labor services; or mercantile businesses. Unfortunately, Accurate Inventory does not satisfy this rule requirement. Therefore, the Administrator's Designee cannot apply this rule to Accurate Inventory in this case.

The Administrator's Designee is sympathetic to the situation that Accurate Inventory faces in this case. As discussed at the hearing, if Accurate Inventory were to divest its Ohio

> inventory business, or perhaps establish the Ohio inventory workers as a separate and distinct corporation, it is likely that the Accurate Inventory's clerical employees at its Ohio headquarters would qualify for manual 8810. Of course, it is up to Accurate Inventory to determine its best course of action with respect to its business organization based upon this order.

(Emphasis sic.)

> Therefore, the Administrator's Designee DENIES the employer's appeal but MODIFIES the decision of the Adjudicating Committee. The Administrator's Designee finds that, as presently organized, Accurate Inventory does not qualify for manual 8810. However, the Administrator's Designee orders that the audit findings be made prospective only from July 1, 2014, in order to permit Accurate Inventory the opportunity to determine whether it wishes to reorganize its business based upon this order.

{¶ 28} 19. On December 8, 2014, relator, Accurate Inventory & Calculating Services, Inc., filed this mandamus action.

Conclusions of Law:

{¶ 29} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 30} Effective July 12, 2012 and currently, Ohio Adm.Code 4123-17-08 is captioned "Classifications according to national council on compensation insurance."

> Thereafter, the code provides:
>
> (A) Classification system.
>
> (1) The purpose of the classification system is to group employers with similar operations into classifications so that:
>
> (a) The assigned classification reflects the exposures common to those employers.
>
> (b) The rate charged reflects the exposure to loss common to those employers.
>
> (2) Subject to certain exceptions, it is the business of the employer within a state that is classified, not separate employments, occupations or operations within the business.

(B) Explanation of classifications.

Classifications are divided into two types - basic classifications and standard exception classifications.

(1) Basic classifications.

Basic classifications describe the business of an employer. This term is applied to all classifications listed in this manual, except for the standard exception classifications.
* * *

(2) Standard exception classifications.

Standard exception classifications describe occupations that are common to many businesses. These common occupations are not included in a basic classification unless specified in the classification working. The standard exception classifications are described below.

(a) Clerical office or drafting employees NOC (code 8810); clerical office or drafting telecommuter employees (code 8871).

The above classifications are assigned when all the following conditions are met: the basic classification(s) wording applicable to the business does not include clerical office, drafting or telecommuting employees; other rules do not prohibit the assignment of code 8810 or code 8871; and the employee meets the duties, site and other requirements listed below.

* * *

(D) Classification procedures. The purpose of the classification procedure is to assign the one basic classification that best describes the business of the employer within a state. Subject to certain exceptions described in this rule, each classification includes all the various types of labor found in a business.

It is the business that is classified, not the individual employments, occupations or operations within the business. Certain exceptions apply and are noted below.

* * *

(3) Assignment of more than one basic classification.

More than one basic classification may be assigned to an insured who meets conditions set forth in paragraphs (D)(3)(a) to (D)(3)(c) of this rule. Operation means activities, enterprises, processes, secondary businesses or undertakings.

(a) The insured's principal business is described by a basic classification that requires certain operations or employees to be separately rated.

(b) The insured conducts one or more of the following operations:

(i) Construction or erection.

(ii) Farming.

(iii) Employee leasing, labor contracting, temporary labor services.

(iv) Mercantile business.

(c) The insured conducts more than one operation in a state.

(i) For purposes of this rule, an insured is conducting more than one operation in a state if portions of the insured's operations in that state are not encompassed by the classification applicable to the insured's principal business. To qualify for a separate classification, the insured's additional operation must:

*(a)* Be able to exist as a separate business if the insured's principal business in the state ceased to exist.

*(b)* Be located in a separate building, or on a separate floor in the same building, or on the same floor physically separated from the principal business by structural partitions. Employees engaged in the principal business must be protected from the operating hazards of the separate additional operations.

*(c)* Maintain proper payroll records.

Effective July 1, 2003, former Ohio Adm.Code 4123-17-08(D) provided:

(D) Classification procedures.

* * *

(3) Assignment of more than one basic classification. More than one basic classification may be assigned to an insured who meets conditions a, b, or c below. Operation means activities, enterprises, processes, secondary businesses or undertakings.
(a) The insured's principal business is described by a basic classification that requires certain operations or employees to be separately rated.

(b) The insured conducts one or more of the following operations:

(i) Construction or erection.

(ii) Farming.

(iii) Employee leasing, labor contracting, temporary labor services.

(iv) Mercantile business.

(c) The insured conducts more than one operation in a state.

(i) For purposes of this rule, an insured is conducting more than one operation in a state if portions of the insured's operations in that state are not encompassed by the classification applicable to the insured's principal business. To qualify for a separate classification, the insured's additional operation must:

*(a)* Be able to exist as a separate business if the insured's principal business in the state ceased to exist.

*(b)* Be located in a separate building, or on a separate floor in the same building, or on the same floor physically separated from the principal business by structural partitions. Employees engaged in the principal business must be protected from the operating hazards of the separate additional operations.

*(c)* Maintain proper payroll records.

{¶ 31} It can be observed that effective July 1, 2003 former Ohio Adm.Code 4123-17-08(D)(3) provided: "More than one basic classification may be assigned to an insured who meets conditions a, b, or c below."

{¶ 32} It can be observed that, effective July 12, 2012 and currently, Ohio Adm.Code 4123-17-08(D)(3) provides: "More than one basic classification may be assigned to an insured who meets conditions set forth in paragraphs (D)(3)(a) to (D)(3)(c) of this rule."

{¶ 33} It can be further observed that, effective July 12, 2012, former Ohio Adm.Code 4123-17-08(D)(3)'s reference to "who meets conditions a, b, or c below" was amended to read "who meets conditions set forth in paragraphs (D)(3)(a) to (D)(3)(c) of this rule." That is, effective July 12, 2012, the three paragraphs a, b, or c were no longer referenced in the disjunctive.

{¶ 34} It can be further noted that the parties have supplemented the record with a copy of the "Ohio BWC State Insurance Fund Manual (July 1, 2012 - June 30, 2013)."

{¶ 35} At page 30 of the State Insurance Fund Manual, the following caption is noted: "4123-17-08 Classifications according to National Council on Compensation Insurance eff. 07/01/2003." At page 35 of the State Insurance Fund Manual, which is a continuation of Ohio Adm.Code 4123-17-08, the following is noted:

> D. Classification procedures.
>
> The purpose of the classification procedure is to assign the one basic classification that best describes the business of the employer within a state. Subject to certain exceptions described in this rule, each classification includes all the various types of labor found in a business.
> It is the business that is classified, not the individual employments, occupations or operations within the business. Certain exceptions apply and are noted below.
>
> * * *
>
> [Three] Assignment of more than one basic classification.
>
> More than one basic classification may be assigned to an insured who meets conditions a, b, or c below.

{¶ 36} It appears to the magistrate that the State Insurance Fund Manual failed to correct for the July 12, 2012 amendment to former Ohio Adm.Code 4123-17-08(D)(3).

{¶ 37} Thus, to the extent the code provision is applicable to this action, it is clear that current Ohio Adm.Code 4123-17-08(D)(3) is applicable, not former Ohio Adm.Code 4123-17-08(D)(3).

{¶ 38} Here, relator argues that the administrator's designee improperly interpreted current Ohio Adm.Code 4123-17-08(D)(3) to read that the conditions set forth in all three of the paragraphs (D)(3)(*a*) to (D)(3)(*c*) must be met in order to obtain assignment of more than one basic classification.  Relator supports its argument by pointing to the State Insurance Fund Manual that was submitted to this court.

{¶ 39} Clearly, the State Insurance Fund Manual is in conflict with current Ohio Adm.Code 4123-17-08(D)(3).  However, that does not mean, as relator suggests, that the State Insurance Fund Manual presents the correct version of Ohio Adm.Code 4123-17-08(D)(3).  The conflict between the State Insurance Fund Manual and the Ohio Administrative Code regarding 4123-17-08(D)(3) must be resolved in favor of the code provision.

{¶ 40} As respondent points out, Ohio Adm.Code 4123-17-08(D)(3) is not pertinent here.

{¶ 41} In actuality, relator is not seeking more than one basic classification pursuant to Ohio Adm.Code 4123-17-08(D).  What relator is actually seeking is to keep the standard exception classification, i.e., manual 8810, while accepting the basic classification of manual 8725.  But, as the AC and the administrator's designee have adequately explained, relator cannot keep the standard exception classification manual 8810 while accepting manual 8725.  To do so would violate Ohio Adm.Code 4123-17-08(B).

{¶ 42} In short, relator's argument fails to account for Ohio Adm.Code 4123-17-08(B).  Contrary to its suggestion, relator was not asking the bureau to assign more than one basic classification.  Rather, relator was asking that it be assigned one basic classification (manual 8725) and one standard exception classification, i.e., manual 8810, but the code forbids use of manual 8810 under the circumstances here.

{¶ **43**} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).