The State ex rel. RMS of Ohio, Inc., Appellant, *v.* Ohio Bureau of Workers' Compensation, Appellee.

[Cite as *State ex rel. RMS of Ohio, Inc. v. Ohio Bur. of Workers' Comp.,* 113 Ohio St.3d 154, 2007-Ohio-1252.]

(No. 2006–0916—Submitted January 9, 2007—Decided April 4, 2007.)

**Per Curiam.**

{¶ 1} The sole question before us is this: Did appellee, the Ohio Bureau of Workers' Compensation, abuse its discretion in reclassifying the nature of the business of appellant, RMS of Ohio, Inc., for purposes of calculating its workers' compensation premium rates? We hold that it did not.

{¶ 2} RMS of Ohio, Inc., provides in-home personal-care services to clients who are mentally handicapped or developmentally disabled. The bureau uses a manual of business-classification codes to determine workers' compensation premiums. The manual is prepared by the National Council on Compensation Insurance, Inc. ("NCCI"). Prior to July 2000, RMS was classified under manual classification code 8861, which covers "Welfare Social Service Organizations Professional Employees," and code 9110, which covers "Welfare Social Service Organizations Non–Professional Employees." A bureau audit of payroll records

from July 2000 through June 2002 resulted in the reclassification of RMS under code 8835, "Nursing–Home Health, Public and Traveling—all employees." Code 8835 requires a higher workers' compensation premium. RMS objected, but the bureau's Adjudicating Committee upheld the reclassification, noting, among other things, that RMS was not a welfare or charitable organization covered by codes 8861 and 9110.

{¶ 3} That order was affirmed by the bureau's administrator's designee.

{¶ 4} RMS filed a mandamus action in the Court of Appeals for Franklin County, alleging that the bureau abused its discretion in reclassifying the nature of its business. RMS conceded that it did not provide services to individuals in a group-home setting and that it was not a charitable or welfare organization, which is what code classifications 8861 and 9110 cover. It acknowledged that its services were instead rendered at the homes of its individual clients, but it argued that location should not be dispositive, since the actual duties, and hence the risks, were similar.

{¶ 5} The court of appeals was not persuaded. Stressing the long-standing deference afforded the agency in classifying occupations and industries, the court denied the writ. This appeal as of right followed.

{¶ 6} We have long recognized the challenges involved in establishing premium rates for workers' compensation coverage and have repeatedly confirmed the deference due the agency in these matters. *State ex rel. Reaugh Constr. Co. v. Indus. Comm.* (1928), 119 Ohio St. 205, 209, 6 Ohio Law Abs. 694, 162 N.E. 800; *State ex rel. McHugh v. Indus. Comm.* (1942), 140 Ohio St. 143, 149, 23 O.O. 361, 42 N.E.2d 774; *State ex rel. Minutemen, Inc. v. Indus. Comm.* (1991), 62 Ohio St.3d 158, 161, 580 N.E.2d 777; *State ex rel. Progressive Sweeping Contrs., Inc. v. Ohio Bur. of Workers' Comp.* (1994), 68 Ohio St.3d 393, 395, 627 N.E.2d 550. Deference is required "in all but the most extraordinary circumstances," with judicial intervention warranted only when the agency has acted in an "arbitrary, capricious or discriminatory" manner. *Progressive Sweeping,* 68 Ohio St.3d at 395–396, 627 N.E.2d 550.

{¶ 7} The rate-making process starts with "classif[ying] occupations or industries with respect to their degree of hazard." R.C. 4123.29(A)(1). The goal is to "assign the one basic classification that best describes the business of the employer within a state." Ohio Adm.Code 4123–17–08(D). It is an undertaking, however, in which "absolute precision * * * is often impossible." *Progressive Sweeping,* 68 Ohio St.3d at 395, 627 N.E.2d 550. Accordingly, we are "reluctant to find an abuse of discretion merely because the employer's actual risk does not precisely correspond with the risk classification assigned." Id. at 396, 627 N.E.2d 550.

{¶ 8} The bureau's decision to reclassify RMS's operations from codes 8861 and 9110 to 8835 is not an abuse of discretion. Codes 8861 and 9110 apply to "charitable or welfare organizations." RMS is not a charitable or welfare organization. Moreover, the scope provision of codes 8861 and 9110 states:

{¶ 9} "Codes 8861 and 9110 are applicable to *institutions* that provide charitable or welfare assistance for clients such as needy persons; mentally, physically or emotionally handicapped persons; abused spouses; and those who may be working off drug- or alcohol-related sentences. Charitable or welfare organizations may offer these individuals sleeping accommodations, meals, counseling, education, training and employment." (Emphasis added.)

{¶ 10} In addition:

{¶ 11} "The following typify operations of a charitable or welfare nature that are contemplated by Codes 8861 and 9110;

{¶ 12} "1. Homes for youths or physically, mentally or emotionally handicapped clients: House 'parents' or counselors may live with a limited number of clients in a *group home*. * * * The clients are taught how to live with one another and perform daily living chores such as laundry, housekeeping and meal preparation. The clients may be sent to another location during the day to work, receive occupational and/or scholastic training or receive medical or psychiatric evaluation.

{¶ 13} "2. Temporary *shelters* for abused persons: These homes provide temporary shelter and food for those involved in physically or mentally abusive or antagonistic relationships. * * *

{¶ 14} "3. *Halfway houses*: These operations provide rehabilitation services to those who have recently left institutional life and require a period of readjustment to the outside world.

{¶ 15} "4. *Rescue missions*: These operations may provide food and shelter for transient clients who may only be in need of a hot meal or temporary shelter." (Emphasis added.)

{¶ 16} RMS does not operate group homes, temporary shelters, halfway houses, or rescue missions, nor does it service them. In contrast, No. 8835's scope provision reads:

{¶ 17} "Code 8835 is assigned to both public and privately owned enterprises engaged in furnishing nursing or health care services *in the homes of individual patients*. The employees rendering such services are mostly registered nurses or licensed practical nurses. Employees of this nature are principally engaged in administering medications and injections, checking vital signs of patients, giving physical therapy treatments, etc.

{¶ 18} "The assignment of the homemaker service classification, Code 8835, is also applicable to both public and nonprofit-making organizations engaged in providing homemaker services. The services typically provided include preparation of meals, performing light housekeeping chores, providing child care and companionship for the infirm or elderly as well as a degree of nursing services or other physical assistance as needed by these individuals." (Emphasis added.)

{¶ 19} RMS provides homemaker services in the homes of individuals. Contrary to RMS's assertions, the fact that it does not provide nursing or medical services is not dispositive, considering the inclusion of nonmedical home care in classification 8835's scope language.

{¶ 20} RMS insists that the only distinction between codes 8861 and 9110 and code 8835 is the work location—private home versus group home. According to RMS, this distinction renders reclassification an abuse of discretion because it is based on location and not on occupational hazard. This analysis, however, assumes that the hazard is the same in both settings, but this is something RMS has not established. The NCCI classifications used by the bureau reflect decades of experience in industrial classification. For the same period of time, this court has reiterated, "The experience of men, expert in this department of investigation, whose reports are founded upon experience touching the various hazards of industries and occupations should be given important consideration." *Reaugh Constr.*, 119 Ohio St. at 209, 6 Ohio Law Abs. 694, 162 N.E. 800. Legitimate reasons exist, based upon industrial experience, for creating distinct classifications for work performed in a private versus an institutional setting.

{¶ 21} An institutional setting must meet local and/or state safety codes in order to remain open: burned-out lights are promptly replaced, walks are shoveled, and stairs and hallways are debris-free. A group setting reasonably requires that the caregiver has assistance nearby should difficulty arise.

{¶ 22} None of these more favorable conditions is guaranteed in a private residence. Thus, there is reasonable justification for classifying group-home services and private-residence services differently and assigning a higher risk to the latter.

{¶ 23} RMS's position is not advanced by its claim that others performing similar services remain under codes 8861 and 9110. RMS relies on the testimony of Gary Brown, a certified public accountant. His testimony was accorded little weight by the bureau, and it is within the bureau's sound discretion to determine how much weight to give to such testimony.

{¶ 24} RMS lastly criticizes the bureau for not adequately explaining its decision, as required by *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 204, 567 N.E.2d 245. Upon review, we conclude that the order does minimally satisfy *Noll.* The order states that RMS is not a charitable or welfare

organization, which is what codes 8861 and 9110 encompass. The order, though brief, does provide justification for reclassification. We do not therefore conclude that the order is so defective as to warrant its vacation and return to the bureau for further consideration.

{¶ 25} To prevail in mandamus, RMS must show a clear legal right to inclusion in codes 8861 and 9110, and it does not do so. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631, paragraph ten of the syllabus. The bureau's reclassification was not an abuse of discretion.

{¶ 26} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

———————

Gibson Law Office Co., L.P.A., and J. Miles Gibson, for appellant.

Marc Dann, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for appellee.