[Cite as *State ex rel. Craftsmen Basement Finishing Sys., Inc. v. Ryan,* 121 Ohio St.3d 492, 2009-Ohio-1676.]

THE STATE EX REL. CRAFTSMEN BASEMENT FINISHING SYSTEM, INC.,

APPELLEE, *v*. RYAN, ADMR., APPELLANT.

[Cite as *State ex rel. Craftsmen Basement Finishing Sys., Inc. v. Ryan,*

**121 Ohio St.3d 492, 2009-Ohio-1676.]**

*Workers' compensation — Occupational classification — Home-remodeling salespersons — "Construction estimator" and "salesperson" classifications reviewed — Reconsideration by bureau ordered.*

(No. 2007-2377 — Submitted March 10, 2009 — Decided April 15, 2009.)

APPEAL from the Court of Appeals for Franklin County,

No. 06AP-1201, 2007-Ohio-5919.

_____

**Per Curiam**.

**{¶ 1}** At issue is the Ohio Bureau of Workers' Compensation's occupational reclassification of certain employees of Craftsmen Basement Finishing System, Inc., appellee, for purposes of workers' compensation premiums. Craftsmen is in the home-renovation business, and it employs salespersons who schedule in-home appointments with prospective customers to discuss their remodeling needs. During the visits, sales personnel take measurements and gather other information to prepare estimates. After that, any further contact between the customer and salesperson takes place in Craftsmen's showroom, not at the home.

**{¶ 2}** Initially, these employees were classified according to the bureau's State Insurance Fund Manual under former classification code No. 8747 – "traveling salesperson – no handling or delivery of products." That classification was later changed to code 8742, "outside salespersons," after the bureau adopted

the National Council of Compensation Insurance ("NCCI") classification scheme as required by R.C. 4123.29(A)(1).

{¶ 3} The bureau periodically reviewed its classifications and, in 2005, reclassified Craftsmen's sales employees into code 5605, "construction estimators." This reclassification significantly increased Craftsmen's premiums. Craftsmen objected to the reassignment, and the matter was heard by the bureau's Adjudicating Committee.

{¶ 4} Craftsmen argued that nothing had changed in its employees' job description to warrant the reclassification. It asserted that its employees did not satisfy the criteria for code 5605 because its sales staff was not exposed to construction but instead went into existing client homes.

{¶ 5} The bureau pointed out that code 5605 defined a construction site as follows: "A space of ground occupied or to be occupied by a building. The location can have an existing building (commercial or residential) or building under construction." The bureau maintained that employees were thus on a "construction site" preparing estimates, which made code 5605 the appropriate classification.

{¶ 6} The committee upheld the classification. It made no findings of fact and merely summarized the parties' positions. It closed with these observations and this holding:

{¶ 7} "The BWC representative noted that this employer is on the low end of the bell curve of what may be considered a construction site.

{¶ 8} "While the Committee is not unsympathetic to the employer's situation, the Adjudicating Committee finds that the reclassification was proper under the NCCI classification system. Therefore, the employer's protest shall be DENIED and the audit findings affirmed."

{¶ 9} That decision was affirmed on appeal to the designee of the predecessor of appellant, Marsha Ryan, the administrator of workers' compensation.

{¶ 10} Craftsmen filed a complaint in mandamus against the administrator in the Court of Appeals for Franklin County, alleging that the bureau's order was contrary to law and did not adequately explain its reasoning as required by *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245. The court agreed. It held that, contrary to the bureau's representation, the order was not self-explanatory. The court cited code 5605's scope provision, which limited the classification's applicability to employees who "sell or estimate the costs of construction, erection or rigging activities outside of an office environment *with exposure to construction, erection or rigging hazards at the job/construction site.*" (Emphasis added.) The provision also referred to "exposure to field hazards" and further stated that "[e]stimators who go to the job/construction site to determine the cost of a job have an increase in job hazards compared to the typical outside salesperson." These comments prompted the court of appeals to conclude:

{¶ 11} "One of the key criteria for determining the applicability of manual 5605 is whether the salespersons are exposed to construction, erection, or rigging hazards and whether the salespersons are subjected to an increase in job hazards compared to the typical outside salesperson. The bureau's order fails to address this criteri[ion]. This failure is particularly significant because the bureau's order acknowledges that the reclassification was a close call." 2007-Ohio-5919 at ¶ 4.

{¶ 12} The court granted a writ that ordered the bureau to vacate its order and issue an amended order.

{¶ 13} The administrator now appeals to this court as of right.

{¶ 14} The administrator contends that the traditional deference that is accorded to the bureau's expertise in rate-making matters exempts it from having

to explain its reclassification decision. Alternatively, she claims that the bureau has adequately explained its reclassification of Craftsmen's sales staff from code 8742 to code 5605. The court of appeals disagreed with both propositions, and we affirm that judgment.

{¶ 15} We have long recognized the bureau's considerable expertise and experience in premium-related matters. *State ex rel. Reaugh Constr. Co. v. Indus. Comm.* (1928), 119 Ohio St. 205, 209, 162 N.E. 800; *State ex rel. Minutemen, Inc. v. Indus. Comm.* (1991), 62 Ohio St.3d 158, 161, 580 N.E.2d 777. That expertise, however, does not supersede the duty this court has imposed upon the Industrial Commission and the bureau to adequately explain their decisions. In *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 6 OBR 531, 453 N.E.2d 721, we held that the Industrial Commission of Ohio must properly explain its decisions, and in *State ex rel. Ochs v. Indus. Comm.* (1999), 85 Ohio St.3d 674, 710 N.E.2d 1126, we imposed that same duty on the bureau.

{¶ 16} The administrator summarizes her second proposition in this passage:

{¶ 17} "Craftsmen fits within this occupational description [code 5605] and the BWC need not describe in any more detail why it was making a change. * * * The order rendered by the Adjudicating Committee found 'that the reclassification was proper under NCCI classification system.' Though concise, this is sufficient."

{¶ 18} The administrator's position seems to imply that in premium-related matters, if the bureau says something is so, it is so, and that is explanation enough. *Ochs,* however, reiterated that "[t]he purpose of an explanation requirement is 'to inform the parties and potentially a reviewing court of the basis for the [agency's] decision.' " 85 Ohio St.3d at 675, 710 N.E.2d 1126, quoting *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.* (1994), 71 Ohio St.3d 139, 142, 642 N.E.2d 378. The sufficiency of the bureau's order must, therefore, be

measured against a larger audience than just that agency, and what may be self-explanatory to the bureau may not be self-explanatory to others.

**{¶ 19}** The court of appeals found that the contested order was not self-explanatory. The administrator suggests that even if the Craftsmen employees at issue could fall under either "8742–outside salespersons" or "5605–construction estimators," it was within the bureau's prerogative to select one over the other. But as the court of appeals stressed, these are not equivalent categories. One, by definition, entails a greater occupational risk than the other. According to the NCCI's scope provision for code 5605, one of the distinguishing features between the two is the "increase in job hazards." The construction-estimator classification "is available only to employees who sell or estimate the costs of construction, erection or rigging activities outside of an office environment *with exposure to construction, erection or rigging hazards at the job/construction site*." (Emphasis added.)

**{¶ 20}** It is not enough that the bureau consider a prospective customer's home to be a job or construction site. There also must be an increased construction hazard to the Craftsmen employee. The bureau's order did not discuss that requirement.

**{¶ 21}** The bureau argues that *State ex rel. RMS of Ohio, Inc. v. Ohio Bur. of Workers' Comp.*, 113 Ohio St.3d 154, 2007-Ohio-1252, 863 N.E.2d 160, is precedent for upholding classification orders that, while cursory, are self-explanatory. *RMS*, however, differs because the two classifications there were immediately distinguishable. One classification applied to charitable organizations and one did not. Consequently, when the bureau made the lone finding that RMS was not a charitable endeavor, the reason for the chosen classification was self-evident. No comparable distinction exists here.

**{¶ 22}** The bureau's order, as the court of appeals noted, characterized the classification into code 5605 as "a close call" for an employer that "is on the low

end of the bell curve of what may be considered a construction site." There was no discussion of the increased site hazard that the NCCI clearly anticipated with the classification. The court of appeals correctly ordered the bureau to issue an amended order.

{¶ 23} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Sebaly, Shillito & Dyer, L.P.A., and Danyelle S.T. Wright, for appellee.

Richard Cordray, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for appellant.

_____