[Cite as *State ex rel. Ohio-Kentucky-Indiana Regional Council of Govts. v. Ohio Bur. of Workers' Comp.*, 2021-Ohio-2001.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Ohio-Kentucky-Indiana
Regional Council of Governments,      :

                                             :

        Relator,

                                             :               No. 20AP-56

v.

                                             :        (REGULAR CALENDAR)

Ohio Bureau of Workers' Compensation,

                                             :

        Respondent.

                                             :

---

D E C I S I O N

Rendered on June 15, 2021

---

**On brief:** *Taft Stettinius & Hollister LLP*, *Samuel M. Duran*, and *Maria C. Castro*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *John R. Smart*, for respondent.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Ohio-Kentucky-Indiana Regional Council of Governments ("OKI"), brings this original action seeking a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC"), to change relator's recently assigned manual classification for purposes of determining risk and workers' compensation premium rates and reassign the more favorable manual classifications previously in effect. Relator asserts that the new manual classification does not fit relator's business activities, was arbitrarily and capriciously assigned, and was not adequately explained or supported by reasoning in the relevant orders.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This matter was referred to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended this court grant relator's request for a writ of mandamus. The magistrate determined BWC abused its discretion by reclassifying OKI as a "[p]ublic employer[], taxing district[]," under R.C. 4123.01(B)(1)(a) and Ohio Adm.Code 4123-17-019(B), and assigning OKI to the "special public authority" classification under BWC Manual code 9443. The magistrate concluded that relator fit the definition of a "public service corporation" under R.C. 4123.01(B)(1)(b) and, therefore, should have retained National Council on Compensation Insurance ("NCCI") Manual codes 8742 (Salespersons or Collectors-Outside) and 8810 (Clerical Office Employees) for purposes of relator's risk assessment and premium rates. Accordingly, the magistrate recommended that we issue a writ of mandamus ordering BWC to vacate its order reclassifying OKI and restore the NCCI Manual classifications previously in effect.

## II. OBJECTIONS

{¶ 3} Respondent sets forth the following objections:

1. The magistrate erred by finding the OKI is a "public service corporation" and a private employer.

2. The magistrate erred in finding the BWC abused its discretion in finding OKI is a public employer appropriately reclassified to Manual 9443.

## III. LEGAL ANALYSIS

{¶ 4} In OKI's first objection, OKI argues that the magistrate erred by finding OKI is a "public service corporation" and, therefore, a private employer under R.C. 4123.01(B)(1)(b). We find this objection largely dispositive of this matter given the fact that an employer must be classified either as a "private employer" under R.C. 4123.01(B)(1)(b) or a "public employer" under R.C. 4123.01(B)(1)(a).

{¶ 5} Pursuant to R.C. 4123.01(H), "[p]rivate employer" means an employer as defined in division (B)(1)(b) of this section. A private employer is defined in R.C. 4123.01(B)(1)(b) as follows:

> Every person, firm, professional employer organization, alternate employer organization, and private corporation,

> *including any public service corporation*, that (i) has in service one or more employees or shared employees regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, or (ii) is bound by any such contract of hire or by any other written contract, to pay into the insurance fund the premiums provided by this chapter.

(Emphasis added.)

{¶ 6}    Here, the dispositive issue in this case is not whether BWC mischaracterized the particular operations performed by employees of OKI in assigning a manual code but whether OKI is a public employer or a private employer.  BWC contends that the magistrate erred in concluding that OKI was a "public service corporation."  We agree.

{¶ 7}    BWC argues that a public service corporation must be a corporation that either provides utility services directly to the public or provides passenger or freight services directly to the public.  In support of its position, BWC relies on the definition of the term "public service corporation" in Ballentine's Law Dictionary which defines the term as:  "A quasi-public corporation, operating for the purpose of supplying gas or electricity to users, carrying passengers or freight, or otherwise as a public utility."  *Ballentine's Law Dictionary* (3d Ed.2010).[1]

{¶ 8}    We note that Black's Law Dictionary contains a similar definition of "public service corporation" as follows:

> A corporation whose operations serve a need of the general public, such as public transportation, communications, gas, water, or electricity.  This type of corporation is usu. subject to extensive governmental regulation.

*Black's Law Dictionary* 393 (9th Ed.2009).

{¶ 9}    There is no evidence in the stipulated record that OKI provides utility services to the public.  Nor is there evidence that OKI provides any services directly to the public. Rather, OKI provides "services within the OKI Region as applicable law will permit and the Board of Directors or the Executive Committee require in order to foster and develop better coordination, protection and satisfaction of the interests and needs of *the public governing*

---

[1] The October 20, 1987 BWC Audit Report identifies OKI as a "not for profit corporation."  (BWC Audit Report at 4.)

*bodies* within OKI Region."  (Emphasis added.)  (Am. and Restated Articles of Agreement at Article II, Section 2.a.)[2]

{¶ 10} We note that R.C. 2909.04 defines the offense of "[d]isrupting public services" as follows:

> (A) No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:
>
> (1) Interrupt or impair television, radio, telephone, telegraph, or other mass communications service; police, fire, or other public service communications; radar, loran, radio, or other electronic aids to air or marine navigation or communications; or amateur or citizens band radio communications being used for public service or emergency communications;
>
> (2) Interrupt or impair public transportation, including without limitation school bus transportation, or water supply, gas, power, or other utility service to the public;
>
> (3) Substantially impair the ability of law enforcement officers, firefighters, rescue personnel, emergency medical services personnel, or emergency facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm.

{¶ 11} While R.C. 2909.04 does not speak directly to the question whether OKI can be considered a public service corporation for purposes of workers' compensation laws, the statute is instructive in that it lists the types of services that are considered "public services" in Ohio.  Though the stipulated record shows that OKI provided services to public governing bodies, there is no indication in the stipulated record and no argument made by OKI that it provides any of the "public services" identified in R.C. 2909.04.  Even though the political subdivisions that have contracted with OKI certainly provide such services, OKI does not.  Thus, it is not appropriate to classify OKI as a public service corporation under R.C. 4123.01(B)(1)(b).

{¶ 12} In *State ex rel. RMS of Ohio, Inc. v. Ohio Bur. of Workers' Comp.*, 113 Ohio St.3d 154, 2007-Ohio-1252, the employer at issue was a business that provided in-home

---

[2] In OKI's June 5, 2020 brief, OKI represents that it "provides coordinated planning services to federal, state, and local governments in connection with addressing regional transportation needs throughout eight counties across Ohio, Kentucky, and Indiana."  (OKI's Brief at 3.)

personal-care services to clients who are mentally handicapped or developmentally disabled. After a BWC audit of the employer's payroll records, BWC reclassified the employer which resulted in a higher workers' compensation premium. Prior to the audit, the employer was classified under manual codes covering "Welfare Social Service Organizations Professional Employees" and "Welfare Social Service Organizations Non-Professional Employees." *Id.* at ¶ 2. On finding that the employer was not a welfare or charitable organization, BWC reclassified the employer and assigned classification codes pertaining to "Nursing-Home Health, Public and Traveling -- all employees." *Id.* at ¶ 2. When BWC denied further review, the employer filed its mandamus action in this court alleging the reclassification constituted an abuse of discretion by BWC.

{¶ 13} In a hearing before a magistrate, the employer conceded that it did not provide services to individuals in a group-home setting and that it was not a charitable or welfare organization, which is what the prior code classifications covered. Though the employer also acknowledged that its services were rendered at the clients' homes, the employer argued that the actual duties of its employees were the same and the risks were similar. This court found that because the services provided by the employer were not provided to individuals in a group-home setting and the employer was not a charitable or welfare organization, the prior code classifications were inaccurate. *Id.* at ¶ 20-22. Accordingly, we denied the requested writ. In so holding, this court afforded deference to BWC and found no abuse of discretion. *Id.*

{¶ 14} Here, OKI claims to be a public service corporation entitled to the rates assigned to private employers even though OKI does not provide a public service and does not provide any services directly to the public. Because OKI does not provide a public service and does not provide any services directly to the public, the magistrate erred in concluding OKI qualified as a public service corporation under R.C. 4123.01(B)(1)(b). *See RMS of Ohio.*

{¶ 15} Accordingly, BWC's first objection is sustained.

{¶ 16} In BWC's second objection, BWC argues the magistrate erred in concluding BWC abused its discretion in finding OKI was a public employer under manual code 9443. The magistrate found that "Manual 9443 is not an NCCI classification. Manual 9443 (Special Public Authorities) is a 'state special,' or classification enacted by the state in

supplementation or exception to the NCCI manuals." (Mag.' s Decision at ¶ 45.) There is no objection to this finding.[3]

{¶ 17} As previously noted, in *RMS of Ohio* the Supreme Court of Ohio "recognized the challenges involved in establishing premium rates for workers' compensation coverage and have repeatedly confirmed the deference due the agency in these matters." *Id.* at ¶ 6. The court further stated:

> Deference is required "in all but the most extraordinary circumstances," with judicial intervention warranted only when the agency has acted in an "arbitrary, capricious or discriminatory" manner. [*State ex rel.*] *Progressive Sweeping* [*Contrs. v. Bur. of Workers' Comp.*], 68 Ohio St.3d [393], 395-396 [1994].
>
> The rate-making process starts with "classif[ying] occupations or industries with respect to their degree of hazard." R.C. 4123.29(A)(1). The goal is to "assign the one basic classification that best describes the business of the employer within a state." Ohio Adm.Code 4123-17-08(D). It is an undertaking, however, in which "absolute precision * * * is often impossible." *Progressive Sweeping,* 68 Ohio St.3d at 395. Accordingly, we are "reluctant to find an abuse of discretion merely because the employer's actual risk does not precisely correspond with the risk classification assigned." *Id.* at 396.

*Id.* at ¶ 6-7.

{¶ 18} In *State ex rel. G&S Metal Prods. Co. v. Ryan*, 10th Dist. No. 09AP-387, 2010-Ohio-3835, the employer, a metal stamping company, filed a protest when BWC conducted an audit and concluded that "all of relator's employees at the Cleveland facility should have been reported under the classification number 3400, entitled 'METAL STAMPED GOODS MFG. NOC.' " *Id.* at ¶ 5. Prior to the audit, the employer reported all the employees at the Cleveland facility under classification number 8018, "STORE: WHOLESALE NOC." *Id.* The employer argued it was entitled to a separate classification for employees at the Cleveland facility who engaged in non-press operations. BWC's adjudicating committee denied the employer's appeal on concluding the non-press

---

[3] Manual code 9443 provides in relevant part as follows: "State Special: applies in OH PHRASEOLOGY: SPECIAL PUBLIC AUTHORITIES, EXCLUDING TRANSIT AUTHORITIES: ALL EMPLOYEES & CLERICAL, CLERICAL TELECOMMUTER, SALESPERSONS, DRIVERS." (June 20, 2019 Final Order at 2.) *See also* Ohio Adm.Code 4123-17-34, Appendix A.

operations carried on at the facility were merely incidental to the metal stamping operation and could not exist as a business separate from the metal stamping operation.

{¶ 19} The employer filed a mandamus action arguing BWC abused its discretion by ordering reclassification. The magistrate found BWC did not abuse its discretion when it concluded the non-press operations could not exist as a separate business for classification purposes. In adopting the magistrate's decision, we made the following observation about the employer's argument for reclassification:

> This argument goes not to the presence or absence of evidence to support BWC's conclusion that the non-press operations could not exist as a separate business, but rather to the conclusion itself. In other words, the cited evidence could as easily have been used to reach the conclusion that those operations could exist as a separate business as it was to reach the conclusion that the operations could not exist as a separate business. We cannot say that BWC abused its discretion when it chose between the two competing inferences and concluded that the non-press operations could not exist as a separate business.

*Id.* at ¶ 15.

{¶ 20} *G&S* Metal *Prods. Co.* stands for the proposition that where BWC chooses among competing inferences supported by the evidence in reaching a conclusion as to the proper manual code applicable to the employer, this court will generally defer to BWC. Here, as was the case in *G&S Metal Prods. Co.*, OKI's primary argument is not that the particular duties of OKI's employees are better described in manual codes 8742 and 8810, rather than manual code 9443, but that those duties were performed for a private employer rather than a pubic employer.[4] In this particular instance, BWC was tasked with setting the rates for an employer who identifies itself as a "public body" and has many attributes of a public employer but also retains certain characteristics of a private employer. BWC chose to treat OKI as a public employer and assign the appropriate manual code that pertains to a public employer in OKI's business. We generally defer to BWC's choice among the competing inference supported by the evidence. *Id.*

{¶ 21} Moreover, in the context of reclassification, the Supreme Court has imposed on BWC the obligation to adequately explain their decisions. *State ex rel. Aaron Rents, Inc.*

---

[4] "Simply, Manual 9443 is not the best manual classification code to describe OKI's business because Manual 9443 is reserved for public employers and OKI is a private employer." (OKI's Reply Brief at 9.)

*v. Ohio Bur. of Workers' Comp.*, 129 Ohio St.3d 130, 2011-Ohio-3140, ¶ 10, quoting *State ex rel. Craftsmen Basement Finishing Sys. v. Ryan*, 121 Ohio St.3d 492, 2009-Ohio-1676, ¶ 15. Accordingly, "[a]n order must 'inform the parties and potentially a reviewing court of the basis of the [agency's] decision.' " *Aaron Rents* at ¶ 10, quoting *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 71 Ohio St.3d 139, 142 (1994).

{¶ 22} Here, BWC explained its decision to reclassify OKI as follows:

> [I]t is BWC's practice to designate an entity a "special district" where two or more taxing districts or political subdivisions unite to provide a public service. The Adjudicating Committee set forth indicia common to entities considered to be "special districts," citing to Mandelker & Netsch, *State and Local Government in a Federal System* (1977). Those criteria are whether the entity: (1) is organized to perform one or more services or functions; (2) is governed by a board of directors that possesses administrative independence from other units of local government; (3) has independent financial and revenue powers similar to those of other local government units; (4) is a separate corporate entity created by state-enabling legislation; and (5) has perpetual existence. *Id.*
>
> In addition to the criteria above, BWC considers other factors to determine whether an employer should be classified as a "special public authority" under manual code 9443. Specifically, the Adjudicating Committee analyzed the "special district" factors, in conjunction with R.C. 167.01 (OKI's enabling statute), and reviewed OKI's bylaws to conclude OKI was appropriately reclassified under 9443.

(BWC Final Order at 4.)

{¶ 23} In our view, BWC adequately explained the reason for reclassifying OKI as a special public authority and assigning manual code 9443. OKI nevertheless contends that it cannot be properly classified under the "[p]ublic employers, taxing districts" classification without having any taxing authority. We disagree.

{¶ 24} Under R.C. 4123.01(J), "[p]ublic employer" means an employer as defined in division (B)(1)(a) of this section. A public employer is defined in R.C. 4123.01 as follows:

> "Employer" means:
>
> (a) The state, including state hospitals, each county, municipal corporation, township, school district, and hospital owned by a political subdivision or subdivisions other than the state.

{¶ 25} Ohio Adm.Code 4123-17-01 amplifies R.C. 4123.01(B)(1)(a) by identifying two distinct types of public employers: "[p]ublic employers, taxing districts" and "[p]ublic employers, state of Ohio, its agencies and instrumentalities." Ohio Adm.Code 4123-17-01(B) and (C). The term "[p]ublic employers, taxing districts" is not defined in Ohio Adm.Code 4123-17-01 or elsewhere in the relevant code provisions. There is no argument in this case that BWC exceeded its statutory authority by enacting Ohio Adm.Code 4123-17-01. Rather, OKI's argument is that it does not fit the category "[p]ublic employers, taxing districts" in Ohio Adm.Code 4123-17-01(B) because OKI does not have independent taxing authority. We disagree.

{¶ 26} Ohio Adm.Code 4123-17-34, entitled "[p]ublic employer taxing districts contribution to the state insurance fund," provides as follows:

> The administrator hereby sets base rates and expected loss rates to be effective January 1, 2019 applicable to the payroll reporting period January 1, 2019 through December 31, 2019 for public employer taxing districts as indicated in the appendix to this rule.[5]

{¶ 27} Appendices A and B to Ohio Adm.Code 4123-17-34 identify numerous governmental and quasi-governmental employers that are considered by BWC as "[p]ublic employers, taxing districts" under Ohio Adm.Code 4123-17-01(B) for purposes of establishing workers' compensation premium rates. In addition to traditional public employers such as counties, cities, townships, and villages, Ohio Adm.Code 4123-17-34 identifies public libraries, special public universities, and public hospitals as "public employer, taxing districts," even though such public bodies do not have independent taxing authority. "Special public authorities" are also identified as "[p]ublic employers, taxing districts" in the appendices. The question raised in this mandamus action is whether it is reasonable for BWC to interpret Ohio Adm.Code 4123-17-01 in this manner. We believe that it is.

{¶ 28} "[A]n administrative rule that is issued pursuant to statutory authority has the force of law unless it is unreasonable or conflicts with a statute covering the same subject matter." *State ex rel. Celebrezze v. Natl. Lime & Stone Co.*, 68 Ohio St.3d 377, 382 (1994), citing *Youngstown Sheet & Tube Co. v. Lindley*, 38 Ohio St.3d 232, 234 (1988).

---

[5] Ohio Adm.Code 4123-17-34 has been periodically amended to reflect the current applicable year, but the remaining provision and the appendices have remained the same during the relevant time period.

This principle of deference is applied to rules adopted by BWC. *State ex rel. HGC Ents. v. Buehrer*, 10th Dist. No. 12AP-482, 2013-Ohio-2108, ¶ 55, citing *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282 (2001); *State ex rel. McLean v. Indus. Comm.*, 25 Ohio St.3d 90 (1986). The Supreme Court has also recognized "the long-accepted principle that considerable deference should be accorded to an agency's interpretation of rules the agency is required to administer." *Natl. Lime & Stone Co.* at 382, citing *State ex rel. Brown v. Dayton Malleable, Inc.*, 1 Ohio St.3d 151, 155 (1982), citing *Jones Metal Prods. Co. v. Walker*, 29 Ohio St.2d 173, 181 (1972). In the context of workers' compensation premiums, the Supreme Court has repeatedly acknowledged the difficulty of setting workers' compensation rates and has deferred to BWC's determination in these matters unless the agency has acted in an arbitrary, capricious, or discriminatory manner. *HGC Ents.* at ¶ 55, citing *State ex rel. Cafaro Mgt. Co. v. Kielmeyer*, 113 Ohio St.3d 1, 2007-Ohio-968.

{¶ 29} Here, the stipulated record shows that multiple public governing bodies within several contiguous states entered into an agreement to create OKI as a regional council pursuant to R.C. 167. OKI represents multiple public governing authorities, including counties, townships, and other public bodies, all of which are taxing districts. OKI identifies itself as a "public body" in its Restated Amended Articles of Agreement, and it is governed and controlled by the elected officials and employees of the various public governing bodies who created it. OKI was created to act as an area-wide agency for the purpose of performing collectively that which each of the public governing bodies was authorized to perform on its own. *See* R.C. 167.03; *Shaker Heights ex rel. Cannon v. DeFranco*, 8th Dist. No. 98063, 2012-Ohio-3965. Though OKI does not have independent taxing authority, OKI's operations are funded by state and federal government grants.

{¶ 30} As previously noted, the purpose of the classification system is to group employers with similar business within this state into classifications that reflect the exposures common to those employers. We do not find BWC acted unreasonably when it adopted manual code 9443, "special public authorities," as a manual code pertaining to "[p]ublic employers, taxing districts." Nor do we believe, on this record, that BWC abused

its discretion when it assigned OKI to a manual code representing a group of public employers that conduct similar business in this state.[6]

{¶ 31} The Supreme Court has cautioned that "[t]he bureau should not be permitted under the guise of administrative convenience to shoehorn an employer into a classification which does not remotely reflect the actual risk encountered." *State ex rel. Progressive Sweeping Contrs., Inc. v. Bur. of Workers' Comp.*, 68 Ohio St.3d 393, 396 (1994). In this instance, rather than classifying OKI as a "private corporation" or a "public service corporation," classifications which are not appropriate, BWC created a classification designed to capture Ohio employers, such as OKI, that do not fit neatly within the existing classifications and have many of the characteristics associated with public employers and special taxing districts. We cannot say BWC acted arbitrarily or unreasonably in adopting manual code 9443, as a means to adequately reflect the risk associated with the operation of a special public authority such as OKI. Moreover, having determined that OKI is not a "public service corporation," as that term is used in R.C. 4123.01(B)(1)(b), we cannot agree with the magistrate that OKI is a private employer. We also find it difficult to conceive of OKI as a "private corporation," as that term is used in R.C. 4123.01(B)(1)(b), when OKI's Restated Amended Articles of Agreement identify OKI as a *public body*.

{¶ 32} For the foregoing reasons, we sustain BWC's second objection.

## IV. CONCLUSION

{¶ 33} On examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and consideration of BWC's objections, we find the magistrate has properly determined the facts but misapplied the applicable law. Accordingly, we sustain BWC's objections, and we deny the requested a writ of mandamus.

*Objections sustained*;
*writ of mandamus denied*.

LUPER SCHUSTER and BEATTY BLUNT, JJ., concur.

_____

---

[6] We note that OKI's business within this state is similar to that of "special taxing districts," such as joint hospital districts, park districts, port authorities, or joint economic development districts ("JEDDs"). "[A] JEDD is a special taxing district, independent of the individual governmental entities that contracted to form the JEDD." *Desenco, Inc. v. Akron*, 84 Ohio St.3d 535, 540 (1999). Any one or more counties, municipal corporations, or townships in the state may adopt a charter form of government, enabling the cities and townships within that county to form JEDDs. *Id. See also* R.C. 715.70(A).

**A P P E N D I X**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Ohio-Kentucky-Indiana          :
Regional Council of Governments,
                                             :
            Relator,
                                             :
v.                                                              No.  20AP-56
                                             :
Ohio Bureau of Workers' Compensation,                    (REGULAR CALENDAR)
                                             :
            Respondent.
                                             :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on December 7, 2020

---

*Taft Stettinius & Hollister LLP, Samuel M. Duran,* and
*Maria C. Castro,* for relator.

*Dave Yost,* Attorney General, and *John R. Smart,* for
respondent.

---

IN MANDAMUS

**{¶ 34}** Relator, the Ohio-Kentucky-Indiana Regional Council of Governments ("OKI") brings this original action seeking a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC" or "bureau"), to change relator's recently-assigned manual classification for purposes of determining risk and workers' compensation premium rates, and reassign the more favorable manual classifications previously in effect. Relator asserts that the new manual classification does not fit relator's employer and employee activities, was arbitrarily and capriciously assigned, and was not adequately explained or supported by reasoning in the relevant commission orders.

Findings of Fact:

{¶ 35} 1. OKI is a non-profit corporation organized under Chapter 167 of the Ohio Revised Code, which provides for councils of local governments, business organizations, and community groups. (Stip. at 72-104.)

{¶ 36} 2. OKI provides planning and coordination services to federal, state, and local governments for implementation of regional transportation solutions in eight contiguous counties in its three namesake states.

{¶ 37} 3. OKI's staff generally consists of clerical and administrative staff who remain in the office, and field representatives who split time between the office and travel to conduct field work including surveys, supervision of activities of local agencies, and meetings with stakeholders.

{¶ 38} 4. OKI has through the years operated under various manual classifications reflecting the two different classes of employees. Manual classifications were reviewed in 1970, 1987, and 1995. In 1995, OKI's administrative and clerical employees were assigned Ohio Manual 8810-04, and employees with some duties outside the office received Ohio Manual 8747-07, council or government staff member/office and away from office.

{¶ 39} 5. Beginning in 1996, BWC gradually converted its manual classifications to a uniform national standard established by the National Council on Compensation Insurance ("NCCI"). BWC eventually assigned NCCI Manuals 8742 (Salespersons or Collectors-Outside) and 8810 (Clerical Office Employees) for OKI employees. (Stip. at 67.)

{¶ 40} 6. BWC conducted another audit of OKI's account in 2010, and again assigned NCCI Manuals 8742 and 8810 to OKI staff.

{¶ 41} 7. After review of OKI's account, on September 11, 2018, BWC informed OKI that it had incorrectly classified OKI as a private employer instead of a public taxing district. (Stip. at 116.) BWC assigned Manual 9443 (Special Public Authorities) for all OKI's employees regardless of duties. (Stip. at 116.) The notice specified that BWC based the change upon ascertaining that OKI was incorporated under R.C. Chapter 167, and that this made OKI a "special district" and therefore a "public entity" for workers' compensation rating. (Stip. at 114.) The change greatly increased OKI's premium rates. (Stip. at 116.)

{¶ 42} 8. OKI sought review of the reclassification by BWC, which again determined that OKI should be classified as a special public authority and public employer. (Stip. at 118.)

{¶ 43} 9. The adjudicating committee reviewed BWC's decision and held a hearing on March 7, 2019. On March 29, 2019, the adjudicating committee issued an order upholding the reclassification. (Stip. at 134-39.)

{¶ 44} 10. OKI further appealed the order of the adjudicating committee and a hearing was held before the administrator's designee on June 20, 2019. (Stip. at 141-49.) The administrator's designee issued an order on October 29, 2019 upholding the order of the adjudicating committee. (Stip. at 144-49.)

{¶ 45} 11. Manual 9443 is not an NCCI classification. Manual 9443 (Special Public Authorities) is a "state special," or classification enacted by the state in supplementation or exception to the NCCI manuals.

{¶ 46} 12. OKI funds its activities through grants from the U.S. Department of Transportation, and state and local government funding.

{¶ 47} 13. OKI is governed by a large board of trustees made up of representatives of the member governments. These meet annually to elect a smaller executive committee.

{¶ 48} 14. The adjudicating committee noted that OKI's amended articles of agreement, under the heading Powers and Purposes, defined OKI as "a public body" governed by a board of directors and executive committee made up of member governments. (Stip. at 138.)

{¶ 49} 15. OKI has no taxing authority.

{¶ 50} 16. OKI's employees are not enrolled in a public employee retirement system.

Discussion and Conclusions of Law:

{¶ 51} To obtain the requested writ of mandamus, OKI must show that it has a clear legal right to the requested relief, there is a clear legal duty on the part of BWC to provide the relief, and OKI lacks an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 162-63 (1967). A clear legal right to a writ exists when the relator shows that BWC has abused its discretion by issuing an order that is not supported by evidence in the record. *State ex rel. Burley v. Coil Packing, Inc.,* 31 Ohio St.3d 18, 20 (1987); *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 78-79 (1986). " 'Abuse of discretion' " has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 87, 19 OBR 123, 126, 482 N.E. 2d 1248, 1252. It is to be expected that most instances of abuse of discretion

will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ent. Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161 (1990).

{¶ 52} Pursuant to R.C. 4123.29(A)(1), BWC must classify every employer by degree of hazard and place employers in the appropriate manual classification identifying employee duties and corresponding risk. *See generally, State ex rel. Aaron Rents, Inc. v. Ohio Bur. of Workers' Comp.,* 129 Ohio St.3d 130, 2011-Ohio-3140, ¶ 6. As exemplified by the history of OKI's classification in Ohio, Ohio Adm.Code 4123-17-08 calls for BWC to apply NCCI manual classifications. Under R.C. 4123.29 and Ohio Adm.Code 4123-17-08(D), " 'the purpose of the classification procedure is to assign the one basic classification that best describes the business of the employer within a state. Subject to certain exceptions described in this rule, each classification includes all the various types of labor found in a business.' " *State ex rel. Accurate Inventory & Calculating Servs v. Buehrer*, 10th Dist. No. 14AP-1008, 2016-Ohio-7004 (Mag. Decision), quoting Ohio Adm.Code 4123-17-08(D). When applying its discretion in classifying employers, "[t]he bureau is afforded 'a wide range of discretion' in dealing with the 'difficult problem' of occupational classification." *State ex rel. Roberds, Inc. v. Conrad,* 86 Ohio St.3d 221-22 (1999), quoting *State ex rel. McHugh v. Indus. Comm.,* 140 Ohio St. 143, 149 (1942). Courts will therefore generally defer to the bureau's expertise in premium matters and find an abuse of discretion only when the classification is "arbitrary, capricious, or discriminatory." *State ex rel. Progressive Sweeping Contrs. v. Bur. of Workers' Comp.,* 68 Ohio St.3d 393, 396 (1994).

{¶ 53} OKI points out that, pursuant to Ohio Adm.Code 4123-17-01, Ohio recognizes three types of employers for purposes of workers' compensation classification: (1) private employers, (2) public employers, taxing districts, and (3) public employers, state of Ohio, its agencies and instrumentalities. Ohio Adm.Code 4123-17-34 provides that Manual Code 9443 falls under the "public employer taxing district" category. OKI asserts that it is not a "public employer" as such is defined under the revised code, and therefore cannot fall under Manual 9443. R.C. 4123.01(B)(1)(a) defines a public employer as "[t]he state, including state hospitals, each county, municipal corporation, township, school district, and hospital

owned by a political subdivision or subdivisions other than the state." R.C. 4123.01(B)(1)(b) defines private employer as follows:

> Every person, firm, professional employer organization, and private corporation, including any public service corporation, that (i) has in service one or more employees or shared employees regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, or (ii) is bound by any such contract of hire or by any other written contract, to pay into the insurance fund the premiums provided by this chapter.

{¶ 54} OKI concedes that it provides a public service, but does not concede that this makes it a public employer, since R.C. 4123.01(B)(1)(a) expressly contemplates that public service corporations may be private employers. OKI stresses that OKI is not a taxing district. OKI further points out that R.C. Chapter 167 provides that membership in a regional council of governments does not constitute holding a public office or constitute public employment.

{¶ 55} BWC responds that OKI is not assigned Manual 9443 on the basis that it is a taxing district in itself, but under BWC's practice to designate an entity as a special district when two or more taxing districts or political subdivisions unite to provide a public service.

{¶ 56} While both parties in this action acknowledge that no manual classification can perfectly fit all the risk ramifications of employees assigned thereto, OKI does point out that BWC's reasoning must address the hazard imposed by the occupation when it assigns a manual classification. *State ex rel. Craftsmen Basement Finishing Sys., Inc. v. Ryan,* 121 Ohio St.3d 492, 2009-Ohio-1676, ¶ 20-22. The magistrate notes that while the previous classification of some of OKI's staff "outside salespersons" does not coincide with the fact that these individuals performed no sales duties, the manual could well have been the best fit for persons performing occasional consulting and conferencing duties outside the office setting and, thus, involving some travel. BWC's assertion, therefore, that OKI must prove a more apt manual than the current 9443 classification is not particularly persuasive, considering that BWC was satisfied with OKI's previous classification for many years and that the previous classification does not appear irrational.

{¶ 57} Nonetheless, BWC's reclassification of OKI in this case appears entirely based upon a reevaluation of OKI as a public employer rather than a private employer. The

magistrate concludes that this reclassification was an abuse of discretion because OKI, despite being publicly funded, does not fit Ohio's statutory definition of a public employer under R.C. 4123.01(B)(1)(a). In contrast, OKI falls within R.C. 4123.01(B)(1)(b)'s definition of a private employer "including any public service corporation." While OKI is funded by taxing districts it is not a taxing district itself, and no definition has been provided, other than BWC's self-announced custom, for determining that a publicly funded entity receiving some measure of support through tax revenue is itself a taxing district under Ohio law.

{¶ 58} It is therefore the magistrate's decision that BWC has abused its discretion in determining that OKI is a public employer. Under statutory definitions, OKI is a private employer and therefore may not be assigned Manual 9443. The magistrate recommends that a writ issue ordering BWC to grant a new hearing and assign the appropriate private-employer manual based upon BWC's assessment of appropriate risk factors and characteristics of OKI's work force duties.


/S/ MAGISTRATE
MARTIN L. DAVIS


## NOTICE TO THE PARTIES

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).